**Jesse L. DAVIS, Appellant,**

v.

**Ralph SHANKS, Jackie Shanks, and A.C. Garison, Independent Executor of the Estate of Jesse L. Harris, Appellees.**

**No. 06–94–00031–CV.**

Court of Appeals of Texas, Texarkana.

Argued Aug. 18, 1994.

Decided Aug. 25, 1994.

Ruth Rayner, Dallas, for appellant.

Fred McDaniel, DeSoto, for appellees Mike & Debbie Schaefer and Alice & Wallace Shanks.

Phil Prescott, Prescott & Prescott, Dallas, for appellee A. C. Garison, Independent Executor of the Estate of Jesse L. Harris.

William C. Odeneal, Odeneal & Odeneal, Dallas, for appellees Ralph & Jackie Shanks.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Jesse Davis appeals from a summary judgment entered in this declaratory judgment action to construe a will. The principal issues on appeal are whether material issues of fact exist precluding summary judgment, whether the probate court erred in refusing to consider extrinsic evidence of the circumstances, family, and affairs of the testator, and whether the probate court erred in finding that the stock certificates were part of the estate as opposed to being owned by Davis as the result of an inter vivos gift from the testator. We find no error in the proceeding and affirm the judgment.

Jesse Harris executed a will in December 1992 and died in January 1993. His will was admitted to probate in March 1993, and letters testamentary were issued to A.C. Garison as independent executor of the estate. Harris' estate consists of both real and personal property, including stock certificates found in his home after his death. The stock has an approximate value of $222,000.00. Garison filed a declaratory judgment action in March 1993, seeking construction of a will provision that bequeathed certain real and personal property to Jesse Davis. The pertinent terms of the will involve a specific bequest of property to Jesse Davis and a paragraph leaving the residual estate to the Shankses and Schaefers.[1] Garison alleged

---

1. The pertinent paragraphs:
   I give, devise and bequeath all of my property of every kind and character to the following persons as follows:
   1. To my long-time friend, JESSE L. DAVIS, presently of Dallas, Dallas County, Texas, I give
   A. my home at 727 Monssen Parkway, Dallas, Dallas County, Texas, together with all

the contents therein; EXCEPT, the curio cabinet and Dresden dolls contained therein which are hereinafter awarded to WANETHA SHANKS;
   ....
   4. All the rest and residue of my estate, of which I may die seized or possessed, or to which I may then or at any time thereafter be entitled, including the sale proceeds from sale

that the bequest to Davis of the contents of the home was ambiguous and uncertain and asked the trial court to determine who should receive the securities—Davis or the residual beneficiaries. Davis, the Shankses, and the Schaefers were all defendants at trial.

Ralph and Jackie Shanks filed a motion for summary judgment, asserting that the bequest to Davis was not ambiguous or uncertain and that the bequest of the "contents" of the home referred only to items ordinarily found within a home and did not include the securities. The trial court granted the Shankses' motion and entered final summary judgment that the securities did not pass to Davis, but instead went to the residuary beneficiaries.[2] Attorneys' fees for all parties were ordered paid by the estate.

Davis filed a motion to modify, correct, or reform the judgment, although the contents of the motion, alleging that material issues of fact exist and asking the trial court to set aside its judgment, indicate that the motion more properly should have been labelled as a motion for new trial. *See* Tex.R.Civ.P. 71 (misnomer of pleadings). That motion was overruled.

■■■ Davis contends that the term "contents" is ambiguous and thus a material issue of fact exists precluding summary judgment. When a will is unambiguous, its proper construction is a question of law for the court to determine. *Floyd v. Floyd,* 813 S.W.2d 758, 759–60 (Tex.App.—El Paso 1991, writ denied). Conversely, the interpretation of a vague or ambiguous document is a question of fact. *See Foshee v. Republic Nat'l Bank,* 617 S.W.2d 675, 679 (Tex.1981).

■■■ Whether or not an ambiguity exists is generally a question of law for the court. *Langston v. First Nat'l Bank,* 449 S.W.2d 855, 857 (Tex.Civ.App.—Amarillo 1969, no writ). A written instrument is ambiguous only when the application of the rules of interpretation applicable to the instrument leave it reasonably susceptible to more than one meaning. *See R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 519 (Tex.1980). In that instance, summary judgment is improper. *Id.* By granting the Shankses' motion for summary judgment, the trial court implicitly found that the will was not ambiguous.

■■■ Oddly enough, the issue of what property is encompassed in a bequest of the "contents" of a home does not seem to be an issue addressed or settled in the Texas courts. There is much out-of-state authority pronouncing that, as a general rule of construction, intangible personal property does not pass under a bequest of the contents of a house. *See In re Estate of Shoptaugh,* 482 N.E.2d 1142, 1144 (Ind.Ct.App.1985); *Old Colony Trust Co. v. Hale,* 302 Mass. 68, 18 N.E.2d 432, 433 (1939); *In re Estate of Lamb,* 445 Pa. 323, 285 A.2d 163, 164 (1971); *see generally* 80 Am.Jur.2d *Wills* § 1277 (1975); D.C. Barrett, Annotation, *What Passes Under Legacy or Bequest of Things Found or Contained in Particular Place or Container,* 5 A.L.R.3d 466 (1966). Thus, absent an expression of contrary intent in the will, the gift of the "contents" of a home is limited to those things ordinarily identified with a home. *Shoptaugh,* 482 N.E.2d at 1144.

In *Linson v. Crapps,* for example, the court held that a bequest of "the contents of [the testatrix'] home" was sufficient to convey the household effects and such articles as are usually kept for household and family use, but did not convey government savings bonds found in a dresser drawer in the home. 204 Ga. 264, 49 S.E.2d 523, 524 (1948). This reflects the majority view that only tangible personal property is contemplated when defining the contents of a house. *Souder v.*

---

of my 1973 Cadillac and 1977 Ford station wagon, which vehicles I direct my executor to sell as soon as practicable after my death, I give to the following persons in equal shares, share and share alike:
  A. WALLACE SHANKS
  B. WANETHA SHANKS
  C. MIKE SCHAEFER
  D. DEBBIE SCHAEFER

  E. RALPH SHANKS
  F. JACKIE SHANKS

2. Also at issue was the disposition of a promissory note and deed of trust; both items were found in the house. The summary judgment holds that these items passed to the residual beneficiaries as well, but Davis challenges the judgment only as to its disposition of the stock certificates.

*Johnson,* 501 So.2d 745, 746 (Fla.Dist.Ct. App.1987).

■ Where the meaning of the language used in the will has been settled by usage and sanctioned by judicial decisions, it is presumed to be used in the sense that the law has given to it and should be so construed. *Mitchell v. Mitchell,* 151 Tex. 1, 244 S.W.2d 803, 806 (1951). Nothing in the will indicates that Harris intended to use the term "contents" differently than in its commonly understood sense. Absent such a contrary intent, the probate court properly gave the bequest its common and ordinary meaning. *See Shriner's Hosp. for Crippled Children v. Stahl,* 610 S.W.2d 147, 152 (Tex.1980); *White v. Taylor,* 155 Tex. 392, 286 S.W.2d 925, 926 (1956). Because the bequest was unambiguous, the construction of the will was a question of law for the probate court, and summary judgment is proper when only a question of law remains. *See New York Underwriters Ins. Co. v. State Farm Mut. Automobile Ins. Co.,* 856 S.W.2d 194, 200 (Tex. App.—Dallas 1993, no writ); *McNamara v. Freedom Newspapers, Inc.,* 802 S.W.2d 901, 903 (Tex.App.—Corpus Christi 1991, writ denied). The court construed the will to give Davis all of the property intimately connected with the house and found that the stock certificates passed under the residuary clause of the will.

The trial court's construction of the will is also in keeping with a recent amendment to the Texas Probate Code. *See* TEX.PROB. CODE ANN. § 58(d)(1) (Vernon Supp.1994). "Contents" now is defined to include only tangible personal property other than titled personal property found inside of or on a specifically bequested or devised item. *Id.* "Contents" includes clothing, pictures, furniture, coin collections, and other items of tangible personal property that do not require a formal transfer of title or that are located in another item of tangible personal property such as a cedar chest or furniture located on real property. *Id.* "Titled personal property" includes stock certificates. TEX.PROB.CODE ANN. § 58(d)(2) (Vernon Supp.1994). The amendment to the probate code, however, applies only to the estates of persons who die on or after September 1,

1993. *See* Act of May 28, 1993, 73rd Leg., R.S., ch. 846, § 35(b), 1993 Tex.Gen.Laws 3337, 3352.

■ The remaindermen also claim that, because the will specifically excludes the curio cabinet and dolls from the bequest to Davis, the term "contents" is limited to a specific class of property contained within the home, namely the furnishings. Under the rule of *ejusdem generis,* where words of a general nature follow or are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation. *See Carr v. Rogers,* 383 S.W.2d 383, 387 (Tex. 1964); *Erwin v. Steele,* 228 S.W.2d 882, 884 (Tex.Civ.App.—Dallas 1950, writ ref'd n.r.e.). The rule is frequently applied to restrict a general bequest; it presumes that the property specified is an indication of the testator's intent. *Erwin,* 228 S.W.2d at 884. There is one difference in the present situation: unlike the other will construction cases, the specific property enumerated in Harris' will is in the form of an *exception* to the general bequest, rather than an enumeration of some of the items bequeathed to Davis. *See, e.g., Carr,* 383 S.W.2d at 387 (request in will that testatrix' "other belongings, dishes, crystal ware, silver, [and] bric a brac" be distributed to relatives with the surplus sold and the proceeds donated to charity did not include real estate, stocks and bonds); *Erwin,* 228 S.W.2d at 884 (will bequest of testatrix' "personal belongings, *such as* ... rings, family pictures and other personal belongings" held not to include savings account, stocks, and bonds). The use of the words "curio cabinet" and "Dresden dolls" indicates more particularly what character of property the testator considered as part of the contents of his home.

■ Davis further complains that the trial court erred in not considering extrinsic evidence offered in response to the motion for summary judgment because that evidence would have allowed the court to more knowledgeably determine the intent of the testator. Testamentary intent is the critical inquiry in will construction cases. *See McGill v. Johnson,* 799 S.W.2d 673, 674 (Tex.1990);

*Henderson v. Parker,* 728 S.W.2d 768, 770 (Tex.1987). In determining the testator's intent regarding the disposition of his estate, the court looks to the express language used within the four corners of the will. *Henderson,* 728 S.W.2d at 770; *Huffman v. Huffman,* 161 Tex. 267, 339 S.W.2d 885, 888 (1960). The intent of the testator must be drawn from the will, not the will from the intent. *Huffman,* 161 Tex. 267, 339 S.W.2d at 888. The true purpose of the inquiry is to ascertain not what the testator meant to express, but what the words he used do express. *See Stahl,* 610 S.W.2d at 151. The words used in the will should be given their common and ordinary meaning absent a contrary expression in the will. *White v. Taylor,* 155 Tex. 392, 286 S.W.2d 925 (1956).

■ When the testator's intent is clear on the face of the will, extrinsic evidence is not admissible to show a contrary intent. *Odeneal v. Van Horn,* 678 S.W.2d 941, 942 (Tex.1984). No speculation or conjecture regarding the intent of the testator is permissible. *Lehman v. Corpus Christi Nat'l Bank,* 668 S.W.2d 687, 689 (Tex.1984). Courts may not redraft the will or vary or add provisions under the guise of construction of the language of the will in order to reflect some presumed intention of the testator. *Stahl,* 610 S.W.2d at 151. In accordance with the rules of construction established in other states, the trial court found that the testator's intent, gathered from the words used in the will, was to leave his home and items intimately connected with a household to Davis. Intangible assets, not being otherwise disposed of under the will, fell into the residual estate. Extrinsic evidence was unnecessary to determine Harris' testamentary intent.

Nonetheless, a review of Davis' evidence follows. Attached to Davis' response to the motion for summary judgment is a statement of account from an attorney who provided services to the deceased shortly before his death. The statement does not appear to have any bearing on the testator's intent at the time he made the will.

■ Also attached to the response is the affidavit of James Zimmerman. Zimmerman recounts a conversation he had with Harris approximately two or two and a half years before Harris died, during which Harris indicated an intention to give or leave Davis some unspecified stock. The trial court also should have disregarded this evidence because, when the will is unambiguous, parol declarations of a testator regarding his intent are not admissible. *Kelley v. Marlin,* 714 S.W.2d 303, 305 (Tex.1986).

Davis also provided an affidavit. Attachments to Davis' affidavit include a handwritten letter from Davis explaining his relationship with the deceased's family and criticizing the behavior of the deceased's relatives, a letter allegedly written by the deceased's sister to Davis while Davis was incarcerated, and a letter from Davis to the court explaining the time he spent in prison. These exhibits all contain general information about Davis, the deceased, and the deceased's family. Also attached to Davis' affidavit is a copy of the agreement Davis has with his attorney.

■ Another attachment to Davis' affidavit is an undated letter, handwritten by the testator to Davis.[3] Davis asserts that it is evidence of Harris' intent that Davis should have the securities. However, the intent of the testator must be found in the words of the will, and other declarations of the testator regarding his intentions are generally not admissible absent an equivocation or ambiguity in the will. *See Stewart v. Selder,* 473 S.W.2d 3, 7 (Tex.1971).

■ Davis further contends that the trial court erred in finding that the stocks were part of the Harris estate and also erred in failing to grant Davis' motion to modify, reform, or correct the summary judgment. In his motion to modify the judgment, Davis alleged, for the first time, that the securities were not part of the estate because the testa-

---

**3.** The letter, which has been torn and taped back together, reads:

Davis. My stock is in your bag in my clothes closet look in your bag before you leave the house carry stock with you don't anybody don't leave this letter behind either tear it up sister wants it this way.

Jesse L. Harris

tor had put the securities in a bag owned by Davis and had written Davis a letter concerning the securities. Davis' assertion of outright ownership of the stock certificates was not included in either his answer or his response to the motion for summary judgment. Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered as grounds for reversal of the summary judgment. TEX. R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671 (Tex. 1979). Until he filed his motion to modify the judgment, Davis had treated the securities as assets belonging to the estate and only raised the possibility of an inter vivos gift after the trial court granted the summary judgment.

■ A trial court has the power to correct judicial mistakes as well as vacate or

| Lawyer | Amt. Requested |
|---|---|
| Odeneal | $6,180.00 |
| Prescott | 4,920.00 |
| Rayner | 8,737.50 |
| McDaniel | 4,230.00 |

set aside a judgment during the time it retains plenary power, and the use or, in this case, nonuse of these powers will not be disturbed on appeal absent an abuse of discretion. *See* TEX.R.CIV.P. 329b; *Ferguson v. Naylor,* 860 S.W.2d 123, 126–27 (Tex.App.—Amarillo 1993, writ denied). Davis has not shown that the trial court acted arbitrarily, unreasonably, or capriciously in including the stock certificates among the assets of the estate or in refusing to set aside the summary judgment.

■ Davis also complains that the trial court abused its discretion in awarding his attorney less than half of the fee requested. All of the attorneys applied for and were awarded attorneys' fees to be paid by the estate:

| Amt. Awarded | Percentage |
|---|---|
| $4,605.00 | 75% |
| 3,630.00 | 74% |
| 2,500.00 | 29% |
| 2,500.00 | 59% |

In a declaratory judgment action, the trial court may award costs and reasonable and necessary attorney's fees as are equitable and just. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). The trial court's decision will not be reversed on appeal absent a clear showing that it abused its discretion. *See Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985). Davis opposed the motion for summary judgment and lost. The trial court did not abuse its discretion in awarding $2,500.00 to his attorney, Ruth Rayner.[4]

The trial court's judgment is affirmed.

---

**4.** Davis also complains about the payment of the cost of the unsuccessful mediation efforts. The court ordered the parties to mediation and further ordered the parties to advance the cost of court-ordered mediation ($500.00 each), which would be taxed as costs. Davis complains that the court abused its discretion in requiring the parties to advance the cost of mediation, but makes his complaint contingent on the estate not reimbursing him. The final judgment provides that all costs are taxed against the estate.