NO.
12-04-00290-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

GINA LEE STUCKI §                      APPEAL FROM THE 321ST

V.

 

PAUL DANIEL STUCKI     §                      JUDICIAL DISTRICT COURT OF

AND IN THE INTEREST OF

B.A.S., M.L.S., C.N.S.,
J.D.S.,

AND L.D.S.,
CHILDREN    §                      SMITH COUNTY, TEXAS

                                                 
                                                                                                          

OPINION

            Appellant
Gina Lee Stucki appeals the trial court’s reformed final decree of
divorce.  On appeal, Gina presents seven
issues.  We reverse and remand in part
and affirm in part.

 

Background

            Gina
and Paul Daniel Stucki were married on October 1, 1987 and are the parents of
five children, B.A.S., M.L.S., C.N.S., J.D.S., and L.D.S.  The family lived in Winnsboro, Texas.  On September 18, 2003, Gina and Paul
separated and, in December, Gina moved with the children to Georgetown, Texas
without prior notice to Paul.  On December
18, Paul filed for divorce.  In his
petition, Paul requested that he and Gina be appointed joint managing
conservators of the children. In Gina’s second amended counterclaim, she
contended that Paul committed adultery and physically abused her and the
children.  Gina requested that she be
appointed sole managing conservator and that, due to an alleged history of
family violence, Paul be appointed possessory conservator with visitation to
take place only in the Georgetown or Austin area.  Gina also asked that Paul be required to pay
child support and spousal maintenance. 
Paul requested that the children’s residence be restricted to Smith or
Wood counties or any contiguous counties. 
In her counterclaim, Gina asked that she be given the exclusive right to
designate the primary residence of the children without geographic restriction.

            The
trial court issued temporary orders on March 18, 2004 appointing Gina and Paul
temporary joint managing conservators of the children.  In the order, the trial court gave Gina the
exclusive right to designate the primary residence of the children within the
city of Georgetown. According to the order, Paul was allowed weekend possession
of the children on the first, third, and fifth weekends of the month, with the
exchange of the children to take place in Corsicana, Texas.  On the fourth weekend of the month, Paul was
allowed Saturday visitation in Georgetown. 
Paul was ordered to pay Gina the amount of $3,800 per month. 

            After
a final trial on May 25 and 26, 2004, the trial court signed a final decree of
divorce appointing Gina and Paul as joint managing conservators of the
children.  Among other orders, the trial
court ordered that Paul pay $1,750 per month in child support and $2,500 per
month in spousal maintenance. Additionally, the trial court gave Gina the
exclusive right to establish the children’s primary residence, which was to be
Smith County and/or any contiguous county. 
However, the trial court found that it was not in the best interest of
B.A.S. to be required to reside, against her wishes, in Smith County and/or any
contiguous county. The trial court allowed Gina to establish B.A.S.’s primary
residence with other family members in Williamson County and/or any contiguous
county. 

            After
a motion for new trial and/or to reform judgment and a hearing, the trial court
reformed the final decree of divorce.  In
its reformed decree, the trial court ordered that Paul pay child support in the
amount of $2,187 per month.  The trial
court also awarded Gina a fifty percent interest in any and all of Paul’s
insurance renewal commissions payable on policies written on or before May 26,
2004.  Paul was obligated to pay these
renewal commissions to Gina only “if, as and when” Paul received such
commissions.  Further, the trial court sua
sponte struck the award of spousal maintenance to Gina. The reformed decree
also changed the language of the former decree regarding the trial court’s
applicability of the residency requirement to B.A.S., finding that it was not
in her best interest “due to prior family violence and mental abuse committed
against” B.A.S. by Paul.  This appeal
followed. 

 

Spousal
Maintenance

            In
her third issue, Gina contends that the trial court abused its discretion by sua
sponte deleting the award of spousal maintenance.  Gina argues that the evidence was legally and
factually insufficient to support a finding that the sua sponte removal
was proper under section 8.051 of the Texas Family Code.  Paul disagrees, arguing that the trial court
was within its rights to reform and/or modify its prior ruling as it deemed
appropriate.  Morever, Paul contends that
withdrawing the spousal maintenance award was justified because Gina failed to
rebut the presumption in section 8.053 of the Texas Family Code.

Applicable Law

            A
motion for new trial shall be filed prior to or within thirty days after the judgment
is signed.  Tex. R. Civ. P. 329b(a). 
If a motion for new trial is timely filed by any party, the trial court
has plenary power to grant a new trial or to vacate, modify, correct, or reform
the judgment until thirty days after all such timely filed motions are
overruled.  Tex. R. Civ. P. 329b(e). 
If a motion for new trial or motion to modify, correct, or reform a
judgment is not determined by written order signed within seventy-five days
after the judgment was signed, it shall be considered overruled by operation of
law on expiration of that period.  Tex. R. Civ. P. 329b(c).  A motion to modify, correct, or reform shall
extend the trial court’s plenary power in the same manner as a motion for new
trial.  Tex.
R. Civ. P. 329b(g).  During the
time it retains plenary power, a trial court has the power to correct judicial
mistakes as well as vacate or set aside a judgment.  See Tex.
R. Civ. P. 329b; Davis v. Shanks, 911 S.W.2d 390, 396
(Tex. App.–Texarkana 1994), rev’d on other grounds, 898 S.W.2d 285 (Tex.
1995).    

            A
trial court may order maintenance for either spouse only if the duration of the
marriage was ten years or longer, the spouse seeking maintenance lacks
sufficient property, including property distributed to the spouse under the
family code, to provide for the spouse’s minimum reasonable needs, and the
spouse seeking maintenance clearly lacks earning ability in the labor market
adequate to provide support for the spouse’s minimum reasonable needs.  Tex.
Fam. Code Ann. § 8.051(2)(C) (Vernon 2006).  If a court determines that a spouse is
eligible to receive maintenance, it shall determine the nature, amount,
duration, and manner of periodic payments by considering all relevant factors,
including the financial resources of the spouse seeking maintenance, such as
the community and separate property and liabilities apportioned to that spouse
in the dissolution proceeding, and that spouse’s ability to meet the spouse’s
needs independently.  Id. §
8.052(1) (Vernon 2006).  There is a
statutory presumption that maintenance “is not warranted.”  Id. § 8.053(a) (Vernon
2006).  The spouse seeking maintenance
must rebut the presumption that maintenance is not warranted by exercising
diligence in seeking suitable employment or developing the necessary skills to
become self-supporting during separation and during the time when the suit for
dissolution is pending.  Id. § 
8.053(a).

Analysis

            The
final decree of divorce was signed on June 18, 2004.  Gina timely filed a motion for new trial
and/or to reform judgment on July 19, 2004. 
See Tex. R. Civ. P. 329b(a).  Because of Gina’s motion, the trial court’s
plenary power was extended, and it had the power to change or alter its
judgment within seventy-five days after the final decree of divorce was
signed.  See Tex. R. Civ. P. 329b(c), (e), (g); Valley
Steel Products, Co. v. Howell, 775 S.W.2d 34, 36 (Tex. App.–Houston
[1st Dist.] 1989, no writ).  The trial
court’s reformed final decree of divorce was signed on August 27, within the
time period of the court’s plenary power.  See  Tex. R.
Civ. P. 329b(c).  Therefore, the
trial court had the power to reform its final decree of divorce.  We must, however, determine if the trial
court acted within its discretion in sua sponte deleting the award of
spousal maintenance.  We review both an
award, or lack thereof, of spousal maintenance and the trial court’s power to
reform its decree of divorce under an abuse of discretion standard. See Sheshtawy
v. Sheshtawy, 150 S.W.3d 772, 777 (Tex. App.–San Antonio 2004, pet.
denied); Davis, 911 S.W.2d at 396.  The test for abuse of discretion is whether
the trial court acted without reference to any guiding rules or
principles.  Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990).   In
other words, whether the trial court’s actions were arbitrary or
unreasonable.  Id.  Under this standard of review, legal and
factual sufficiency of the evidence, although not independent grounds for
asserting error, are relevant factors in assessing whether the trial court
abused its discretion.  Seidel v.
Seidel, 10 S.W.3d 365, 368 (Tex. App.–Dallas 1999, no pet.).

            At
trial, Gina testified that she had never worked and, in the six months before
trial, had done nothing to help with finances. 
Paul admitted that Gina lacked skills or training, but believed that she
could be a “fantastic” salesperson. 
However, Paul stated that he did not want her to work, but wanted her to
remain at home raising the children. 
From his testimony, Paul appeared to want Gina to stay home even after
the divorce.  Paul testified that, apart
from him, Gina did not have any independent financial resources.  Gina stated that she was enrolled at a local
community college and was attempting to enter the nursing program.  At the time of trial, Gina was taking a
developmental math program and, if her prerequisites were satisfactorily
completed, she would be able to enter the nursing program in the spring.  Gina’s mother, Sandra Sanchez, admitted that
Gina had not worked since moving to Georgetown after the parties separated and
had not taken any classes as of the date of trial.  In its final decree of divorce, the trial
court found that Gina was eligible for maintenance. In a hearing on Gina’s
motion for new trial and/or to reform judgment, the trial court increased its
award of child support and deleted all references to “alimony” or
maintenance.  However, the trial court
also awarded Gina a fifty percent interest in any and all of Paul’s renewal
commissions.

            Even
though Gina was eligible for spousal maintenance, such award was not mandated
by the Family Code.  See Tex. Fam. Code Ann. § 8.051(2)(C),
8.053(a).  Admittedly, Gina had not
worked since the parties separated, although she was, at the time of trial,
showing some attempt to develop skills to become self-supporting.  See id. § 8.053(a).  Further, by awarding fifty percent of Paul’s
renewal commissions to Gina, the trial court increased Gina’s financial
resources.  This award could have been a
factor in determining whether to award spousal maintenance.  See id. § 8.052(1).  These factors could have led the trial court
to reconsider its award of spousal maintenance and change its final decree of
divorce.  Because evidence was presented
regarding Gina’s lack of earning capacity and her diligence in obtaining
employment or suitable skills to support herself and the trial court awarded
her additional financial resources, we cannot conclude that the trial court
abused its discretion in deleting the award of spousal maintenance from its
reformed decree of divorce.  See Sheshtawy,
150 S.W.3d at 777; Davis, 911 S.W.2d at 396.  Accordingly, Gina’s third issue is overruled.

 

Child
Support

            In
her sixth issue, Gina contends that the trial court abused its discretion by
awarding only $2,187 per month in child support.  Gina argues that the evidence is legally and
factually insufficient to support a finding of child support below the sum of
$2,400 per month.  Paul disagrees.

Applicable Law

            A
trial court shall calculate net resources for the purpose of determining child
support liability.  Tex. Fam. Code Ann. § 154.062(a)
(Vernon 2002).  Resources include one
hundred percent of all wage and salary income and other compensation for
personal services, including commissions, overtime pay, tips, and bonuses.  Id. § 154.062(b)(1) (Vernon
2002).  Further, in its discretion, the
trial court may exclude from self-employment income amounts allowable under
federal income tax law as depreciation, tax credits, or any other business expenses
shown by the evidence to be inappropriate in making the determination of income
available for the purpose of calculating child support.  Id. § 154.065(b) (Vernon
2002).  A trial court’s order of child
support will not be disturbed on appeal unless the complaining party can show a
clear abuse of discretion. Worford, 801 S.W.2d at 109. 

Analysis

            Paul
testified that, according to his 2003 income tax return, his gross income was
$121,140, including a one time $20,000 bonus. 
He calculated his child support based on a gross income of $101,000,
subtracting self-employment taxes, gasoline, and health insurance. As such,
Paul stated that he had an adjusted gross monthly income of $5,467.13.  Paul testified that, based on a gross annual
income of $101,000, his child support should be $2,186.85.  Gina disagreed that the $20,000 bonus was a
one time bonus and testified that Paul’s employer continuously “offer[s]”
bonuses.  In the original decree of
divorce, the trial court ordered Paul to pay $1,750 per month based upon an
adjusted gross income of $56,000 per year and the additional needs of the
children.  In the reformed decree of
divorce, the trial court changed the amount of child support to $2,187 per
month. The reformed decree stated that the child support was based on Paul’s
adjusted net resources of $65,606.  The
record includes no testimony or other evidence to support this amount of
adjusted net resources.  Nor does it
appear that the trial court changed the amount of child support based on a
higher amount of adjusted yearly income. 
Instead, in a hearing regarding child support and spousal maintenance,
the trial court stated that it increased child support by changing previously
ordered spousal maintenance to child support.

            Regardless
of the statement in the reformed decree of divorce, it appears that the trial
court based its original and reformed orders of child support on Paul’s gross
income of $101,000 and omitted the $20,000 bonus from his resources.  As such, the trial court’s calculation of
Paul’s child support directly contradicts the plain language of the statute
that includes bonuses in resources.  See
id. § 154.062(b)(1). 
Although the trial court heard testimony regarding Paul’s business
expenses, there was no testimony or evidence that the bonus was depreciation, a
tax credit, or any other business expense. 
See id. § 154.065(b). 
Therefore, because the trial court did not consider Paul’s $20,000 bonus
as a part of his resources for purposes of determining child support, we
conclude that the trial court abused its discretion.  See Worford, 801 S.W.2d at 109.
Accordingly, Gina’s sixth issue is sustained. 

 

Child
Support Arrearage

            In
her seventh issue, Gina argues that the trial court abused its discretion by
failing to find an arrearage in Paul’s child support under the temporary
orders.  Gina contends that the evidence
was legally and factually insufficient to support a finding that there was no
arrearage.  Paul argues that Gina waived
her right to assert this claim on appeal because she failed to plead for any
arrearage.  An appellate court reviews a
trial court’s decision regarding child support for an abuse of discretion.  In re Tucker, 96 S.W.3d 662,
664 (Tex. App.–Texarkana 2003, no pet.). 
The judgment of a trial court shall conform to the pleadings of the
parties.  Tex. R. Civ. P. 301; Cunningham v. Parkdale Bank,
660 S.W.2d 810, 812 (Tex. 1983). 
Further, a party may not obtain a judgment based upon a theory not
pleaded.  Affiliated Capital Corp.
v. Musemeche, 804 S.W.2d 216, 219 (Tex. App.–Houston [14th Dist.] 1991,
writ denied).  Thus, a party may not be
granted relief in the absence of pleadings to support that relief.  Cunningham, 660 S.W.2d at 813; Holmstrom
v. Lee, 26 S.W.3d 526, 532 (Tex. App.–Austin 2000, no pet.).  Gina did not file a written pleading or motion
for enforcement to support her claim for an arrearage of child support.  Because Gina failed to support her claim with
proper pleadings, the trial court did not abuse its discretion by failing to
find an arrearage of child support. 
Accordingly, Gina’s seventh issue is overruled.

 

Sole
Managing Conservator

            In
her fourth issue and as part of her fifth issue, Gina contends that the trial
court abused its discretion by failing to appoint Gina as sole managing
conservator because Paul committed family violence against Gina and her
children during the marriage.  Paul
argues that the language regarding family violence was included in the reformed
final decree of divorce prepared by Gina’s attorney and is inconsistent with
the trial court’s record or findings of fact and conclusions of law.

Finding in Reformed Decree of Divorce

            We
must first ascertain whether there was a finding of family violence.  As noted above, the reformed final decree of
divorce stated that B.A.S. was not required to reside in Smith County and/or
any contiguous county because the trial court found it was not in her best
interest “due to prior family violence and mental abuse committed against”
B.A.S. by Paul.  The Texas Rules of Civil
Procedure state that findings of fact shall not be recited in a judgment.  Tex.
R. Civ. P. 299a.  If there is a
conflict between findings of fact recited in a judgment in violation of this
rule and findings of fact pursuant to rules 297 and 298 of the Texas Rules of
Civil Procedure, the latter findings will control. Tex. R. Civ. P. 299a. 
When findings of fact are filed by the trial court, they shall form the
basis of the judgment upon all grounds of recovery and of any defense embraced
therein.  Tex. R. Civ. P. 299; Guridi v. Waller, 98
S.W.3d 315, 316 (Tex. App.–Houston [1st Dist.] 2003, no pet.).

            At
no time prior to the reformed decree did the trial court make a finding of
family violence. As such, with no findings of fact on the issue of family
violence, we may not presume such a finding. 
See Guridi, 98 S.W.3d at 316.  Thus, we must consider the evidence in order
to determine whether the trial court erred in appointing Paul as a joint
managing conservator.

Sole Managing Conservator

            In
determining conservatorship, the best interest of the child shall be the
primary consideration.  Tex. Fam. Code Ann. § 153.002 (Vernon
2002).  The trial court has wide latitude
in determining the best interest of a child, and the decision of the trial
court will be reversed only when it appears from the record as a whole that the
court has abused its discretion.  Marriage
of Stein, 153 S.W.3d 485, 488 (Tex. App.–Amarillo 2004, no pet.).  It is a rebuttable presumption that the
appointment of the parents of a child as joint managing conservators is in the
best interest of the child.  Tex. Fam. Code Ann. § 153.131(b)
(Vernon 2002).  A finding of a history of
family violence involving the parents of the child removes the
presumption.  Id. 

            Evidence
of family violence determines whether a trial court may appoint the parties as
joint managing conservators.  See id.
§ 153.004 (Vernon Supp. 2005).  The trial
court shall consider evidence of the intentional use of abusive physical force
by a party against the party’s spouse, a parent of the child, or any person
younger than eighteen years of age committed within a two year period preceding
the filing of the suit or during the pending of the suit.  Id. § 153.004(a) (Vernon Supp.
2005).  If credible evidence is presented
of a history or pattern of past or present physical abuse by one parent
directed against the other parent or a child, the trial court may not appoint
joint managing conservators.  Id.
§ 153.004(b) (Vernon Supp. 2005).  In
determining whether there is credible evidence, the trial court shall consider
whether a protective order was rendered against the parent during the two year
period preceding the filing of the suit or during the pending of the suit.  Id. § 153.004(f) (Vernon Supp.
2005).

            “Family
violence” is an act that is intended to result in physical harm, bodily injury,
assault, or sexual assault or that is a threat that reasonably places the
family member in fear of imminent physical harm, bodily injury, assault, or
sexual assault, but does not include defensive measures to protect oneself.  Id. § 71.004(1) (Vernon
2002).  “Family violence” is also abuse
by a member of a family toward a child of the family.  Id. § 71.004(2).  “Abuse” is defined as mental or emotional
injury to a child that results in observable and material impairment in the child’s
growth, development, or psychological functioning, or physical injury that
results in substantial harm to the child, excluding reasonable discipline by a
parent that does not expose the child to a substantial risk of harm.  Id. § 261.001(1)(A), (C)
(Vernon Supp. 2005).  

            At
trial, Gina testified to some incidents of alleged family violence.  However, these incidents occurred prior to
two years preceding the filing of the suit. 
She also testified that, about a year ago, Paul threw a remote control at
her, but struck L.D.S. instead.  Gina
admitted that she described Paul as a great father in a previous hearing.  Gina stated that Paul had called some of the
children names, which was contrary to her previous testimony.  Gina testified that the incidents of name
calling occurred after the hearing and, more particularly, during Paul’s visits
to Georgetown.  Then, she stated that
Paul had called the children names before the hearing, just not “vile”
names.  She admitted calling Paul
disparaging names.  Paul testified that
he had been physically, verbally, and mentally abused during the marriage.  He alleged that he was kicked in the ribs
every night and punched in the face. 
Despite these accusations, Paul admitted that he and Gina took a trip to
Hawaii together approximately one month before trial.  According to Paul, they shared a hotel room.

            B.A.S.
had heard her father call her mother “bad” names.”  B.A.S. stated that, in October of 2003, Paul
sat on her after they had an argument. 
She asked him to get up, but he refused. B.A.S. testified that she got
mad, pushed Paul off, and ran to her room. 
According to B.A.S., on the afternoon of May 7, 2004, she, Gina, Paul,
and three of her siblings were in Gina’s suburban.  B.A.S. was driving and, at some point, Paul
began questioning B.A.S. and she refused to respond.  B.A.S. believed she may have told Paul that
she hoped he would “go to hell.”  Paul
became upset and hit her on the head with a book.  B.A.S. testified that Paul hit her hard
enough to give her a headache, but not hard enough to seriously hurt her.  According to B.A.S., she asked Paul to stop,
but he refused to do so if she continued to speak rudely.  At that point, B.A.S. stated that Paul hit
her again on the back of the head.  
B.A.S. testified that on their way home, Paul told her that she was
going to be a “slutty bitch” like her mother.

            Dr.
Wade French testified that, after meeting with all the children, he never
received the impression that Paul abused the children.  None of the children told him that Paul was
abusing them or their mother.  Regarding
Paul’s allegedly striking B.A.S. on the head with a book, French testified that
he would have to look at that incident in the context of its origin, a highly
charged emotional atmosphere.  French did
not believe that this incident was strong evidence that Paul was a danger to
the children.  Amber Young, a friend of
the family, stated that, in the year before trial, B.A.S. was doing homework
and Paul asked her to take out the trash. 
When she did not immediately take out the trash, Paul walked over,
grabbed her arm, and pulled her from the chair across the floor to the
door.  According to Young, B.A.S. got mad
and yanked her arm away.  Lisa Carol
Lloyd, Gina’s friend, stated that she had seen the effects of abuse on Gina in
the past.  Lisa testified that in 2002
Paul admitted abusing Gina because he stated that he hit Gina with his fist on
the side of her head. According to Lisa, Paul stated that he felt justified
because Gina hit him.  Lisa observed bruises
on the side of Gina’s body and a cut on her ear.  However, Gina told Lisa that Paul was an
excellent father.

            The
trial court was in a better position than an appellate court to determine what
was in the best interest of the children because the trial court observed the
parties and witnesses, noted their demeanor, and had the opportunity to
evaluate their claims.  See Martinez
v. Molinar, 953 S.W.2d 399, 403 (Tex. App.–El Paso 1997, no writ).  B.A.S. admitted that Paul did not hit her
hard enough to seriously injure her. 
French stated that the incident must be looked at in the context of the
family history and did not believe that this incident was evidence that Paul
was a danger to the children. Paul’s action was not a  physical injury that resulted in substantial
harm to B.A.S.  See Tex. Fam. Code Ann. §
261.001(1)(C).  Nor did the action result
in physical harm or bodily injury to B.A.S. See id. §
71.004(1).  Although there was testimony
that Paul called Gina and some of the children names, there was no testimony
that the children suffered observable and material impairment as a result.  See id. §
261.001(1)(A).  Moreover, none of the
children told French that they had been abused. 
Even though both parents and Lisa testified to family violence, the
trial court was in a better position to evaluate their claims and believe or
disbelieve them.  See Martinez,
953 S.W.2d at 403. Although we do not take claims of family violence lightly,
we cannot conclude from the record before us that the trial court abused its
discretion in determining that Gina failed to rebut the presumption that both
parents should be appointed joint managing conservators of the children.  See id. § 153.131(b).  Accordingly, Gina’s fourth issue and the
portion of her fifth issue regarding sole managing conservatorship are
overruled.

 

Split
Residency

            In
her first issue, Gina contends that the trial court abused its discretion by
permitting B.A.S. to remain in Williamson County while imposing a residency
restriction on her other children, effectively ordering the separation of the
children of the same marriage.  Gina
argues that the trial court did not articulate any clear or compelling reason
for its order.  Paul contends that the
trial court’s ruling did not divide the family, but, instead, allowed B.A.S. to
make her own decision whether to live with Gina and her siblings or remain in
Georgetown. 

            The
trial court has wide latitude in determining the best interest of a child, and
the decision of the trial court will be reversed only when it appears from the
record as a whole that the court has abused its discretion.  Marriage of Stein, 153 S.W.3d
at 488.  The trial court, in open court,
stated that it would not force B.A.S. to visit with Paul because she was “so
aligned.”  In its reformed decree of
divorce, the trial court found that it was not in B.A.S.’s best interest to be
required to reside, against her wishes, in Smith County and/or any contiguous
county.  The trial court allowed Gina to
establish B.A.S.’s primary residence with other family members in Williamson
County and/or any contiguous county. 

            The
evidence at trial showed that Paul and B.A.S. had a strained and difficult
relationship. B.A.S. testified that she and Paul do not “always get along,” but
that she enjoyed seeing him when he was in a pleasant mood.  B.A.S. admitted that when she and Paul were
together, they “always end up getting in a fight or getting mad at each other.”  They yell at each other, and B.A.S. stated
that Paul “sometimes” called her names. 
B.A.S. admitted that, after Paul hit her with the book, she asked for
Gina’s cellular telephone to call Gina’s lawyer and inform him of the
incident.  In fact, B.A.S. stated that
she might have said that she was going to call the police.  B.A.S. did not believe that she called Paul a
“faggot” that day, but admitted that she had done so previously.  Paul admitted that his relationship with
B.A.S. was strained.  Amber Young, a
friend of the family, admitted that B.A.S. was angry at Paul.  She stated that B.A.S. yelled at Paul and
that they argued.

            Because
B.A.S. and Paul had a strained relationship, the trial court did not abuse its
discretion by not forcing B.A.S. to live in Smith County and/or any contiguous
county.  Gina points out that custody of
children of the same marriage should not be divided.  However, the trial court’s ruling did not
result in divided custody of the children. 
See MacDonald v. MacDonald, 821 S.W.2d 458, 463
(Tex. App.–Houston [14th Dist.] 1992, no writ). 
Accordingly, Gina’s first issue is overruled.

 

Residency
Restriction

            In
her second issue and as part of her fifth issue, Gina contends that the trial
court abused its discretion by imposing a residency restriction against her and
her four younger children.  Gina argues
that the evidence is legally and factually insufficient to support a finding
that the residency restriction is in the best interest of the children.  Paul disagrees, arguing that stability in the
children’s home and surroundings and the wide latitude given a court in
determining the best interest of the children support the trial court’s
decision. 

Applicable Law

            The
public policy of the State of Texas is to assure that children have frequent
and continuing contact with parents who have shown the ability to act in the
best interest of the children and to encourage parents to share in the rights
and duties of raising their children after the parents have separated or
dissolved their marriage.  Tex. Fam. Code Ann. § 153.001(a)(1),
(3) (Vernon 2002).  The best interest of
the children shall be the primary consideration of the court in determining the
issues of conservatorship and possession of and access to the children. Id.
§ 153.002 (Vernon 2002). The trial court has wide latitude in determining the
best interest of a child, and the decision of the trial court will be reversed
only when it appears from the record as a whole that the court has abused its
discretion.  Marriage of Stein,
153 S.W.3d at 488.  When rendering an
order appointing joint managing conservators, the court shall designate the
conservator who has the exclusive right to determine the primary residence of
the children and establish, until modified by further order, a geographic area
in which the children are to reside and any contiguous county thereto within
which the conservator shall maintain the children’s primary residence.  Id. § 153.134(b)(1)(A) (Vernon
2002).  The court may also specify that
the conservator may determine the children’s primary residence without regard
to geographic location.  Id.
§ 153.134(b)(1)(B) (Vernon 2002). 

Analysis

            In
September 2003, Paul moved to Tyler from the family home in Winnsboro.  In December 2003, Gina moved with the
children to Georgetown without informing Paul. 
The temporary orders obligated Gina to surrender the children to Paul in
Corsicana on the first, third, and fifth Friday of each month.  Paul stated that, since Gina’s move, he had seen
the children virtually every weekend. However, Paul testified that he drove to
Georgetown to visit the children for eighteen of the twenty-three weekends
since the temporary orders.  Although
Paul asked Gina to meet him halfway with the children, it had never
happened.  According to Paul, Gina would
tell him that the children had extracurricular activities and could not come to
Tyler.  In fact, several times his
children called him crying that they would have to miss an activity and would
ask him to come to Georgetown.  Gina
recalled that, in December 2003, she told the trial court that, if she were
allowed to live in Georgetown, she would meet Paul halfway every weekend so
that he could stay involved with the children. 
She claimed that she met Paul halfway every first and third weekend, but
then admitted that she met him halfway three or four times.  Gina admitted that Paul had seen the children
all but one weekend.

            Paul
believed that it was in the children’s best interest for them to live close
enough so that he could see them daily 
and was worried about the effect that the long distance would have on
their relationship.  Gina stated that she
did not want Paul to see the children less, just to realize that he cannot do “those
things” to the children.  French
recommended that the children be allowed to stay in Georgetown, but that Paul
be granted at least minimum standard visitation.  Further, he recommended that Gina be required
to bring the children to Athens at least once a month and that Paul be required
to go to Georgetown another weekend during the month.  French testified that the children needed to
spend their time visiting with the parent, not in the back seat of an
automobile. French agreed that the distance between Tyler and Georgetown would
put time restrictions on Paul’s relationship with his children.  However, French stated that visitation was
complicated because of the children’s activities.  In French’s opinion, if Paul obligated the
children to come to Tyler twice per month, then they would be very upset with
him when they missed weekend activities.

            In
the reformed decree of divorce, the trial court ordered that the primary
residence of the children, except B.A.S., be Smith County and/or any contiguous
county.  Gina was given the exclusive
right to establish the children’s primary residence within Smith County and/or
any contiguous county.  Both orders were
permitted by statute.  See id.
§ 153.134(b)(1)(A).  Paul and Gina
admitted that, during the pendency of the temporary orders, surrendering the
children halfway between Tyler and Georgetown was a failure.  As a result, Paul traveled almost every
weekend to Georgetown, a burden not contemplated by the temporary orders.  The trial court could have found that the
previous long distance visitation was unworkable.  Both parents agreed that it was in the
children’s best interest to be close to them. 
Although French recommended that the children be allowed to live in
Georgetown, he admitted that the long distance could have an effect on the children’s
relationship with Paul.  Because it was
in the children’s best interest to have frequent and continuing contact with
their parents and the previously ordered visitation failed, the trial court did
not abuse its discretion in ordering that the primary residence of the
children, except B.A.S., be Smith County and/or any contiguous county.  See Marriage of Stein, 153
S.W.3d at 488. Accordingly, Gina’s second issue and the portion of her fifth
issue regarding the residency restriction are overruled.

 

Conclusion

            Having
sustained Gina’s sixth issue, we reverse the reformed decree of
divorce regarding  child support and remand
to the trial court for an award consistent with this opinion.  In all other respects, the trial court’s
reformed decree of divorce is affirmed.

 

 

                                                                                                   JAMES T. WORTHEN   

                                                                                                               Chief Justice

 

 

 

 

 

Opinion
delivered July 31, 2006.

Panel
consisted of Worthen, C.J. and Griffith, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)