

CHIEF JUSTICE
JAMES T. WORTHEN

CLERK
CATHY S. LUSK

**TWELFTH COURT OF APPEALS**

JUSTICES
SAM GRIFFITH

CHIEF STAFF ATTORNEY
MARGARET HUSSEY

Monday, July 31, 2006

Mr. H. Philip Campbell
100 E. Whitestone Blvd.
Suite 148-272
Cedar Park, TX 78613

Mr. Scott R. Ellis
419 West Houston
Tyler, TX 75702

RE:     Case Number:            12-04-00290-CV
        Trial Court Case Number:   03-3354-D

Style:  Gina Lee Stucki
        v.
        Paul Daniel Stucki and In the Interest of B.A.S., M.L.S., C.N.S, J.D.S and L.D.S,
        children

Enclosed is a copy of the Opinion issued this date in the above styled and numbered cause.
Also enclosed is a copy of the Court's judgment.

Very truly yours,

CATHY S. LUSK, CLERK

By: *Katrina McClenny*
     Katrina McClenny, Chief Deputy Clerk

CC:     Hon. John Ovard
        Judge Carole W. Clark
        Ms. Lois Rogers

# NO. 12-04-00290-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *GINA LEE STUCKI*<br>*V.* | § | *APPEAL FROM THE 321ST* |
| *PAUL DANIEL STUCKI*<br>*AND IN THE INTEREST OF*<br>*B.A.S., M.L.S., C.N.S., J.D.S.,* | § | *JUDICIAL DISTRICT COURT OF* |
| *AND L.D.S., CHILDREN* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Appellant Gina Lee Stucki appeals the trial court's reformed final decree of divorce. On appeal, Gina presents seven issues. We reverse and remand in part and affirm in part.

## BACKGROUND

Gina and Paul Daniel Stucki were married on October 1, 1987 and are the parents of five children, B.A.S., M.L.S., C.N.S., J.D.S., and L.D.S. The family lived in Winnsboro, Texas. On September 18, 2003, Gina and Paul separated and, in December, Gina moved with the children to Georgetown, Texas without prior notice to Paul. On December 18, Paul filed for divorce. In his petition, Paul requested that he and Gina be appointed joint managing conservators of the children. In Gina's second amended counterclaim, she contended that Paul committed adultery and physically abused her and the children. Gina requested that she be appointed sole managing conservator and that, due to an alleged history of family violence, Paul be appointed possessory conservator with visitation to take place only in the Georgetown or Austin area. Gina also asked that Paul be required to pay child support and spousal maintenance. Paul requested that the children's residence be

restricted to Smith or Wood counties or any contiguous counties. In her counterclaim, Gina asked that she be given the exclusive right to designate the primary residence of the children without geographic restriction.

The trial court issued temporary orders on March 18, 2004 appointing Gina and Paul temporary joint managing conservators of the children. In the order, the trial court gave Gina the exclusive right to designate the primary residence of the children within the city of Georgetown. According to the order, Paul was allowed weekend possession of the children on the first, third, and fifth weekends of the month, with the exchange of the children to take place in Corsicana, Texas. On the fourth weekend of the month, Paul was allowed Saturday visitation in Georgetown. Paul was ordered to pay Gina the amount of $3,800 per month.

After a final trial on May 25 and 26, 2004, the trial court signed a final decree of divorce appointing Gina and Paul as joint managing conservators of the children. Among other orders, the trial court ordered that Paul pay $1,750 per month in child support and $2,500 per month in spousal maintenance. Additionally, the trial court gave Gina the exclusive right to establish the children's primary residence, which was to be Smith County and/or any contiguous county. However, the trial court found that it was not in the best interest of B.A.S. to be required to reside, against her wishes, in Smith County and/or any contiguous county. The trial court allowed Gina to establish B.A.S.'s primary residence with other family members in Williamson County and/or any contiguous county.

After a motion for new trial and/or to reform judgment and a hearing, the trial court reformed the final decree of divorce. In its reformed decree, the trial court ordered that Paul pay child support in the amount of $2,187 per month. The trial court also awarded Gina a fifty percent interest in any and all of Paul's insurance renewal commissions payable on policies written on or before May 26, 2004. Paul was obligated to pay these renewal commissions to Gina only "if, as and when" Paul received such commissions. Further, the trial court *sua sponte* struck the award of spousal maintenance to Gina. The reformed decree also changed the language of the former decree regarding the trial court's applicability of the residency requirement to B.A.S., finding that it was not in her best interest "due to prior family violence and mental abuse committed against" B.A.S. by Paul. This appeal followed.

2

## SPOUSAL MAINTENANCE

In her third issue, Gina contends that the trial court abused its discretion by *sua sponte* deleting the award of spousal maintenance. Gina argues that the evidence was legally and factually insufficient to support a finding that the *sua sponte* removal was proper under section 8.051 of the Texas Family Code. Paul disagrees, arguing that the trial court was within its rights to reform and/or modify its prior ruling as it deemed appropriate. Morever, Paul contends that withdrawing the spousal maintenance award was justified because Gina failed to rebut the presumption in section 8.053 of the Texas Family Code.

## Applicable Law

A motion for new trial shall be filed prior to or within thirty days after the judgment is signed. TEX. R. CIV. P. 329b(a). If a motion for new trial is timely filed by any party, the trial court has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until thirty days after all such timely filed motions are overruled. TEX. R. CIV. P. 329b(e). If a motion for new trial or motion to modify, correct, or reform a judgment is not determined by written order signed within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period. TEX. R. CIV. P. 329b(c). A motion to modify, correct, or reform shall extend the trial court's plenary power in the same manner as a motion for new trial. TEX. R. CIV. P. 329b(g). During the time it retains plenary power, a trial court has the power to correct judicial mistakes as well as vacate or set aside a judgment. *See* TEX. R. CIV. P. 329b; *Davis v. Shanks*, 911 S.W.2d 390, 396 (Tex. App.–Texarkana 1994), *rev'd on other grounds*, 898 S.W.2d 285 (Tex. 1995).

A trial court may order maintenance for either spouse only if the duration of the marriage was ten years or longer, the spouse seeking maintenance lacks sufficient property, including property distributed to the spouse under the family code, to provide for the spouse's minimum reasonable needs, and the spouse seeking maintenance clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs. TEX. FAM. CODE ANN. § 8.051(2)(C) (Vernon 2006). If a court determines that a spouse is eligible to receive maintenance, it shall determine the nature, amount, duration, and manner of periodic payments by considering all relevant factors, including the financial resources of the spouse seeking maintenance, such as the

community and separate property and liabilities apportioned to that spouse in the dissolution proceeding, and that spouse's ability to meet the spouse's needs independently. *Id.* § 8.052(1) (Vernon 2006). There is a statutory presumption that maintenance "is not warranted." *Id.* § 8.053(a) (Vernon 2006). The spouse seeking maintenance must rebut the presumption that maintenance is not warranted by exercising diligence in seeking suitable employment or developing the necessary skills to become self-supporting during separation and during the time when the suit for dissolution is pending. *Id.* § 8.053(a).

## Analysis

The final decree of divorce was signed on June 18, 2004. Gina timely filed a motion for new trial and/or to reform judgment on July 19, 2004. *See* TEX. R. CIV. P. 329b(a). Because of Gina's motion, the trial court's plenary power was extended, and it had the power to change or alter its judgment within seventy-five days after the final decree of divorce was signed. *See* TEX. R. CIV. P. 329b(c), (e), (g); *Valley Steel Products, Co. v. Howell*, 775 S.W.2d 34, 36 (Tex. App.–Houston [1st Dist.] 1989, no writ). The trial court's reformed final decree of divorce was signed on August 27, within the time period of the court's plenary power. *See* TEX. R. CIV. P. 329b(c). Therefore, the trial court had the power to reform its final decree of divorce. We must, however, determine if the trial court acted within its discretion in *sua sponte* deleting the award of spousal maintenance. We review both an award, or lack thereof, of spousal maintenance and the trial court's power to reform its decree of divorce under an abuse of discretion standard. *See Sheshtawy v. Sheshtawy*, 150 S.W.3d 772, 777 (Tex. App.–San Antonio 2004, pet. denied); *Davis*, 911 S.W.2d at 396. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). In other words, whether the trial court's actions were arbitrary or unreasonable. *Id.* Under this standard of review, legal and factual sufficiency of the evidence, although not independent grounds for asserting error, are relevant factors in assessing whether the trial court abused its discretion. *Seidel v. Seidel*, 10 S.W.3d 365, 368 (Tex. App.–Dallas 1999, no pet.).

At trial, Gina testified that she had never worked and, in the six months before trial, had done nothing to help with finances. Paul admitted that Gina lacked skills or training, but believed that she could be a "fantastic" salesperson. However, Paul stated that he did not want her to work, but

4

wanted her to remain at home raising the children. From his testimony, Paul appeared to want Gina to stay home even after the divorce. Paul testified that, apart from him, Gina did not have any independent financial resources. Gina stated that she was enrolled at a local community college and was attempting to enter the nursing program. At the time of trial, Gina was taking a developmental math program and, if her prerequisites were satisfactorily completed, she would be able to enter the nursing program in the spring. Gina's mother, Sandra Sanchez, admitted that Gina had not worked since moving to Georgetown after the parties separated and had not taken any classes as of the date of trial. In its final decree of divorce, the trial court found that Gina was eligible for maintenance. In a hearing on Gina's motion for new trial and/or to reform judgment, the trial court increased its award of child support and deleted all references to "alimony" or maintenance. However, the trial court also awarded Gina a fifty percent interest in any and all of Paul's renewal commissions.

Even though Gina was eligible for spousal maintenance, such award was not mandated by the Family Code. *See* TEX. FAM. CODE ANN. § 8.051(2)(C), 8.053(a). Admittedly, Gina had not worked since the parties separated, although she was, at the time of trial, showing some attempt to develop skills to become self-supporting. *See id.* § 8.053(a). Further, by awarding fifty percent of Paul's renewal commissions to Gina, the trial court increased Gina's financial resources. This award could have been a factor in determining whether to award spousal maintenance. *See id.* § 8.052(1). These factors could have led the trial court to reconsider its award of spousal maintenance and change its final decree of divorce. Because evidence was presented regarding Gina's lack of earning capacity and her diligence in obtaining employment or suitable skills to support herself and the trial court awarded her additional financial resources, we cannot conclude that the trial court abused its discretion in deleting the award of spousal maintenance from its reformed decree of divorce. *See* ***Sheshtawy***, 150 S.W.3d at 777; ***Davis***, 911 S.W.2d at 396. Accordingly, Gina's third issue is overruled.


### CHILD SUPPORT

In her sixth issue, Gina contends that the trial court abused its discretion by awarding only $2,187 per month in child support. Gina argues that the evidence is legally and factually insufficient to support a finding of child support below the sum of $2,400 per month. Paul disagrees.

## Applicable Law

A trial court shall calculate net resources for the purpose of determining child support liability. TEX. FAM. CODE ANN. § 154.062(a) (Vernon 2002). Resources include one hundred percent of all wage and salary income and other compensation for personal services, including commissions, overtime pay, tips, and bonuses. *Id.* § 154.062(b)(1) (Vernon 2002). Further, in its discretion, the trial court may exclude from self-employment income amounts allowable under federal income tax law as depreciation, tax credits, or any other business expenses shown by the evidence to be inappropriate in making the determination of income available for the purpose of calculating child support. *Id.* § 154.065(b) (Vernon 2002). A trial court's order of child support will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford*, 801 S.W.2d at 109.

## Analysis

Paul testified that, according to his 2003 income tax return, his gross income was $121,140, including a one time $20,000 bonus. He calculated his child support based on a gross income of $101,000, subtracting self-employment taxes, gasoline, and health insurance. As such, Paul stated that he had an adjusted gross monthly income of $5,467.13. Paul testified that, based on a gross annual income of $101,000, his child support should be $2,186.85. Gina disagreed that the $20,000 bonus was a one time bonus and testified that Paul's employer continuously "offer[s]" bonuses. In the original decree of divorce, the trial court ordered Paul to pay $1,750 per month based upon an adjusted gross income of $56,000 per year and the additional needs of the children. In the reformed decree of divorce, the trial court changed the amount of child support to $2,187 per month. The reformed decree stated that the child support was based on Paul's adjusted net resources of $65,606. The record includes no testimony or other evidence to support this amount of adjusted net resources. Nor does it appear that the trial court changed the amount of child support based on a higher amount of adjusted yearly income. Instead, in a hearing regarding child support and spousal maintenance, the trial court stated that it increased child support by changing previously ordered spousal maintenance to child support.

Regardless of the statement in the reformed decree of divorce, it appears that the trial court based its original and reformed orders of child support on Paul's gross income of $101,000 and

6

omitted the $20,000 bonus from his resources. As such, the trial court's calculation of Paul's child support directly contradicts the plain language of the statute that includes bonuses in resources. *See id.* § 154.062(b)(1). Although the trial court heard testimony regarding Paul's business expenses, there was no testimony or evidence that the bonus was depreciation, a tax credit, or any other business expense. *See id.* § 154.065(b). Therefore, because the trial court did not consider Paul's $20,000 bonus as a part of his resources for purposes of determining child support, we conclude that the trial court abused its discretion. *See Worford*, 801 S.W.2d at 109. Accordingly, Gina's sixth issue is sustained.

## CHILD SUPPORT ARREARAGE

In her seventh issue, Gina argues that the trial court abused its discretion by failing to find an arrearage in Paul's child support under the temporary orders. Gina contends that the evidence was legally and factually insufficient to support a finding that there was no arrearage. Paul argues that Gina waived her right to assert this claim on appeal because she failed to plead for any arrearage. An appellate court reviews a trial court's decision regarding child support for an abuse of discretion. *In re Tucker*, 96 S.W.3d 662, 664 (Tex. App.–Texarkana 2003, no pet.). The judgment of a trial court shall conform to the pleadings of the parties. TEX. R. CIV. P. 301; *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812 (Tex. 1983). Further, a party may not obtain a judgment based upon a theory not pleaded. *Affiliated Capital Corp. v. Musemeche*, 804 S.W.2d 216, 219 (Tex. App.–Houston [14th Dist.] 1991, writ denied). Thus, a party may not be granted relief in the absence of pleadings to support that relief. *Cunningham*, 660 S.W.2d at 813; *Holmstrom v. Lee*, 26 S.W.3d 526, 532 (Tex. App.–Austin 2000, no pet.). Gina did not file a written pleading or motion for enforcement to support her claim for an arrearage of child support. Because Gina failed to support her claim with proper pleadings, the trial court did not abuse its discretion by failing to find an arrearage of child support. Accordingly, Gina's seventh issue is overruled.

## SOLE MANAGING CONSERVATOR

In her fourth issue and as part of her fifth issue, Gina contends that the trial court abused its discretion by failing to appoint Gina as sole managing conservator because Paul committed family

violence against Gina and her children during the marriage. Paul argues that the language regarding family violence was included in the reformed final decree of divorce prepared by Gina's attorney and is inconsistent with the trial court's record or findings of fact and conclusions of law.

## Finding in Reformed Decree of Divorce

We must first ascertain whether there was a finding of family violence. As noted above, the reformed final decree of divorce stated that B.A.S. was not required to reside in Smith County and/or any contiguous county because the trial court found it was not in her best interest "due to prior family violence and mental abuse committed against" B.A.S. by Paul. The Texas Rules of Civil Procedure state that findings of fact shall not be recited in a judgment. TEX. R. CIV. P. 299a. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact pursuant to rules 297 and 298 of the Texas Rules of Civil Procedure, the latter findings will control. TEX. R. CIV. P. 299a. When findings of fact are filed by the trial court, they shall form the basis of the judgment upon all grounds of recovery and of any defense embraced therein. TEX. R. CIV. P. 299; *Guridi v. Waller*, 98 S.W.3d 315, 316 (Tex. App.–Houston [1st Dist.] 2003, no pet.).

At no time prior to the reformed decree did the trial court make a finding of family violence. As such, with no findings of fact on the issue of family violence, we may not presume such a finding. See *Guridi*, 98 S.W.3d at 316. Thus, we must consider the evidence in order to determine whether the trial court erred in appointing Paul as a joint managing conservator.

## Sole Managing Conservator

In determining conservatorship, the best interest of the child shall be the primary consideration. TEX. FAM. CODE ANN. § 153.002 (Vernon 2002). The trial court has wide latitude in determining the best interest of a child, and the decision of the trial court will be reversed only when it appears from the record as a whole that the court has abused its discretion. *Marriage of Stein*, 153 S.W.3d 485, 488 (Tex. App.–Amarillo 2004, no pet.). It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. TEX. FAM. CODE ANN. § 153.131(b) (Vernon 2002). A finding of a history of family violence involving the parents of the child removes the presumption. *Id.*

Evidence of family violence determines whether a trial court may appoint the parties as joint managing conservators. See *id.* § 153.004 (Vernon Supp. 2005). The trial court shall consider

evidence of the intentional use of abusive physical force by a party against the party's spouse, a parent of the child, or any person younger than eighteen years of age committed within a two year period preceding the filing of the suit or during the pending of the suit. *Id.* § 153.004(a) (Vernon Supp. 2005). If credible evidence is presented of a history or pattern of past or present physical abuse by one parent directed against the other parent or a child, the trial court may not appoint joint managing conservators. *Id.* § 153.004(b) (Vernon Supp. 2005). In determining whether there is credible evidence, the trial court shall consider whether a protective order was rendered against the parent during the two year period preceding the filing of the suit or during the pending of the suit. *Id.* § 153.004(f) (Vernon Supp. 2005).

"Family violence" is an act that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the family member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself. *Id.* § 71.004(1) (Vernon 2002). "Family violence" is also abuse by a member of a family toward a child of the family. *Id.* § 71.004(2). "Abuse" is defined as mental or emotional injury to a child that results in observable and material impairment in the child's growth, development, or psychological functioning, or physical injury that results in substantial harm to the child, excluding reasonable discipline by a parent that does not expose the child to a substantial risk of harm. *Id.* § 261.001(1)(A), (C) (Vernon Supp. 2005).

At trial, Gina testified to some incidents of alleged family violence. However, these incidents occurred prior to two years preceding the filing of the suit. She also testified that, about a year ago, Paul threw a remote control at her, but struck L.D.S. instead. Gina admitted that she described Paul as a great father in a previous hearing. Gina stated that Paul had called some of the children names, which was contrary to her previous testimony. Gina testified that the incidents of name calling occurred after the hearing and, more particularly, during Paul's visits to Georgetown. Then, she stated that Paul had called the children names before the hearing, just not "vile" names. She admitted calling Paul disparaging names. Paul testified that he had been physically, verbally, and mentally abused during the marriage. He alleged that he was kicked in the ribs every night and punched in the face. Despite these accusations, Paul admitted that he and Gina took a trip to Hawaii together approximately one month before trial. According to Paul, they shared a hotel room.

B.A.S. had heard her father call her mother "bad" names." B.A.S. stated that, in October of 2003, Paul sat on her after they had an argument. She asked him to get up, but he refused. B.A.S. testified that she got mad, pushed Paul off, and ran to her room. According to B.A.S., on the afternoon of May 7, 2004, she, Gina, Paul, and three of her siblings were in Gina's suburban. B.A.S. was driving and, at some point, Paul began questioning B.A.S. and she refused to respond. B.A.S. believed she may have told Paul that she hoped he would "go to hell." Paul became upset and hit her on the head with a book. B.A.S. testified that Paul hit her hard enough to give her a headache, but not hard enough to seriously hurt her. According to B.A.S., she asked Paul to stop, but he refused to do so if she continued to speak rudely. At that point, B.A.S. stated that Paul hit her again on the back of the head. B.A.S. testified that on their way home, Paul told her that she was going to be a "slutty bitch" like her mother.

Dr. Wade French testified that, after meeting with all the children, he never received the impression that Paul abused the children. None of the children told him that Paul was abusing them or their mother. Regarding Paul's allegedly striking B.A.S. on the head with a book, French testified that he would have to look at that incident in the context of its origin, a highly charged emotional atmosphere. French did not believe that this incident was strong evidence that Paul was a danger to the children. Amber Young, a friend of the family, stated that, in the year before trial, B.A.S. was doing homework and Paul asked her to take out the trash. When she did not immediately take out the trash, Paul walked over, grabbed her arm, and pulled her from the chair across the floor to the door. According to Young, B.A.S. got mad and yanked her arm away. Lisa Carol Lloyd, Gina's friend, stated that she had seen the effects of abuse on Gina in the past. Lisa testified that in 2002 Paul admitted abusing Gina because he stated that he hit Gina with his fist on the side of her head. According to Lisa, Paul stated that he felt justified because Gina hit him. Lisa observed bruises on the side of Gina's body and a cut on her ear. However, Gina told Lisa that Paul was an excellent father.

The trial court was in a better position than an appellate court to determine what was in the best interest of the children because the trial court observed the parties and witnesses, noted their demeanor, and had the opportunity to evaluate their claims. *See Martinez v. Molinar*, 953 S.W.2d 399, 403 (Tex. App.–El Paso 1997, no writ). B.A.S. admitted that Paul did not hit her hard enough

10

to seriously injure her. French stated that the incident must be looked at in the context of the family history and did not believe that this incident was evidence that Paul was a danger to the children. Paul's action was not a physical injury that resulted in substantial harm to B.A.S. *See* TEX. FAM. CODE ANN. § 261.001(1)(C). Nor did the action result in physical harm or bodily injury to B.A.S. *See id.* § 71.004(1). Although there was testimony that Paul called Gina and some of the children names, there was no testimony that the children suffered observable and material impairment as a result. *See id.* § 261.001(1)(A). Moreover, none of the children told French that they had been abused. Even though both parents and Lisa testified to family violence, the trial court was in a better position to evaluate their claims and believe or disbelieve them. *See Martinez*, 953 S.W.2d at 403. Although we do not take claims of family violence lightly, we cannot conclude from the record before us that the trial court abused its discretion in determining that Gina failed to rebut the presumption that both parents should be appointed joint managing conservators of the children. *See id.* § 153.131(b). Accordingly, Gina's fourth issue and the portion of her fifth issue regarding sole managing conservatorship are overruled.

## SPLIT RESIDENCY

In her first issue, Gina contends that the trial court abused its discretion by permitting B.A.S. to remain in Williamson County while imposing a residency restriction on her other children, effectively ordering the separation of the children of the same marriage. Gina argues that the trial court did not articulate any clear or compelling reason for its order. Paul contends that the trial court's ruling did not divide the family, but, instead, allowed B.A.S. to make her own decision whether to live with Gina and her siblings or remain in Georgetown.

The trial court has wide latitude in determining the best interest of a child, and the decision of the trial court will be reversed only when it appears from the record as a whole that the court has abused its discretion. *Marriage of Stein*, 153 S.W.3d at 488. The trial court, in open court, stated that it would not force B.A.S. to visit with Paul because she was "so aligned." In its reformed decree of divorce, the trial court found that it was not in B.A.S.'s best interest to be required to reside, against her wishes, in Smith County and/or any contiguous county. The trial court allowed Gina to establish B.A.S.'s primary residence with other family members in Williamson County and/or any

11

contiguous county.

The evidence at trial showed that Paul and B.A.S. had a strained and difficult relationship. B.A.S. testified that she and Paul do not "always get along," but that she enjoyed seeing him when he was in a pleasant mood. B.A.S. admitted that when she and Paul were together, they "always end up getting in a fight or getting mad at each other." They yell at each other, and B.A.S. stated that Paul "sometimes" called her names. B.A.S. admitted that, after Paul hit her with the book, she asked for Gina's cellular telephone to call Gina's lawyer and inform him of the incident. In fact, B.A.S. stated that she might have said that she was going to call the police. B.A.S. did not believe that she called Paul a "faggot" that day, but admitted that she had done so previously. Paul admitted that his relationship with B.A.S. was strained. Amber Young, a friend of the family, admitted that B.A.S. was angry at Paul. She stated that B.A.S. yelled at Paul and that they argued.

Because B.A.S. and Paul had a strained relationship, the trial court did not abuse its discretion by not forcing B.A.S. to live in Smith County and/or any contiguous county. Gina points out that custody of children of the same marriage should not be divided. However, the trial court's ruling did not result in divided custody of the children. *See MacDonald v. MacDonald*, 821 S.W.2d 458, 463 (Tex. App.–Houston [14th Dist.] 1992, no writ). Accordingly, Gina's first issue is overruled.

## RESIDENCY RESTRICTION

In her second issue and as part of her fifth issue, Gina contends that the trial court abused its discretion by imposing a residency restriction against her and her four younger children. Gina argues that the evidence is legally and factually insufficient to support a finding that the residency restriction is in the best interest of the children. Paul disagrees, arguing that stability in the children's home and surroundings and the wide latitude given a court in determining the best interest of the children support the trial court's decision.

### Applicable Law

The public policy of the State of Texas is to assure that children have frequent and continuing contact with parents who have shown the ability to act in the best interest of the children and to encourage parents to share in the rights and duties of raising their children after the parents have

12

separated or dissolved their marriage. TEX. FAM. CODE ANN. § 153.001(a)(1), (3) (Vernon 2002). The best interest of the children shall be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the children. *Id.* § 153.002 (Vernon 2002). The trial court has wide latitude in determining the best interest of a child, and the decision of the trial court will be reversed only when it appears from the record as a whole that the court has abused its discretion. *Marriage of Stein*, 153 S.W.3d at 488. When rendering an order appointing joint managing conservators, the court shall designate the conservator who has the exclusive right to determine the primary residence of the children and establish, until modified by further order, a geographic area in which the children are to reside and any contiguous county thereto within which the conservator shall maintain the children's primary residence. *Id.* § 153.134(b)(1)(A) (Vernon 2002). The court may also specify that the conservator may determine the children's primary residence without regard to geographic location. *Id.* § 153.134(b)(1)(B) (Vernon 2002).

**Analysis**

In September 2003, Paul moved to Tyler from the family home in Winnsboro. In December 2003, Gina moved with the children to Georgetown without informing Paul. The temporary orders obligated Gina to surrender the children to Paul in Corsicana on the first, third, and fifth Friday of each month. Paul stated that, since Gina's move, he had seen the children virtually every weekend. However, Paul testified that he drove to Georgetown to visit the children for eighteen of the twenty-three weekends since the temporary orders. Although Paul asked Gina to meet him halfway with the children, it had never happened. According to Paul, Gina would tell him that the children had extracurricular activities and could not come to Tyler. In fact, several times his children called him crying that they would have to miss an activity and would ask him to come to Georgetown. Gina recalled that, in December 2003, she told the trial court that, if she were allowed to live in Georgetown, she would meet Paul halfway every weekend so that he could stay involved with the children. She claimed that she met Paul halfway every first and third weekend, but then admitted that she met him halfway three or four times. Gina admitted that Paul had seen the children all but one weekend.

Paul believed that it was in the children's best interest for them to live close enough so that he could see them daily and was worried about the effect that the long distance would have on their

relationship. Gina stated that she did not want Paul to see the children less, just to realize that he cannot do "those things" to the children. French recommended that the children be allowed to stay in Georgetown, but that Paul be granted at least minimum standard visitation. Further, he recommended that Gina be required to bring the children to Athens at least once a month and that Paul be required to go to Georgetown another weekend during the month. French testified that the children needed to spend their time visiting with the parent, not in the back seat of an automobile. French agreed that the distance between Tyler and Georgetown would put time restrictions on Paul's relationship with his children. However, French stated that visitation was complicated because of the children's activities. In French's opinion, if Paul obligated the children to come to Tyler twice per month, then they would be very upset with him when they missed weekend activities.

In the reformed decree of divorce, the trial court ordered that the primary residence of the children, except B.A.S., be Smith County and/or any contiguous county. Gina was given the exclusive right to establish the children's primary residence within Smith County and/or any contiguous county. Both orders were permitted by statute. *See id.* § 153.134(b)(1)(A). Paul and Gina admitted that, during the pendency of the temporary orders, surrendering the children halfway between Tyler and Georgetown was a failure. As a result, Paul traveled almost every weekend to Georgetown, a burden not contemplated by the temporary orders. The trial court could have found that the previous long distance visitation was unworkable. Both parents agreed that it was in the children's best interest to be close to them. Although French recommended that the children be allowed to live in Georgetown, he admitted that the long distance could have an effect on the children's relationship with Paul. Because it was in the children's best interest to have frequent and continuing contact with their parents and the previously ordered visitation failed, the trial court did not abuse its discretion in ordering that the primary residence of the children, except B.A.S., be Smith County and/or any contiguous county. *See Marriage of Stein*, 153 S.W.3d at 488. Accordingly, Gina's second issue and the portion of her fifth issue regarding the residency restriction are overruled.

## Conclusion

Having sustained Gina's sixth issue, we *reverse* the reformed decree of divorce regarding

14

child support and *remand* to the trial court for an award consistent with this opinion. In all other respects, the trial court's reformed decree of divorce is *affirmed*.

JAMES T. WORTHEN

Chief Justice

Opinion delivered July 31, 2006.
*Panel consisted of Worthen, C.J. and Griffith, J.*

(PUBLISH)



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### JULY 31, 2006

### NO. 12-04-00290-CV

### GINA LEE STUCKI

### V.

### PAUL DANIEL STUCKI

### AND IN THE INTEREST OF B.A.S., M.L.S., C.N.S.,

### J.D.S. AND L.D.S., CHILDREN

---

Appeal from the 321st Judicial District Court
of Smith County, Texas. (Tr.Ct.No. 03-3354-D)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being inspected, it is the opinion of this court that there was error in a portion of the trial court's reformed decree of divorce, and that the same should be affirmed in part and reversed and remanded in part.

It is therefore ORDERED, ADJUDGED and DECREED that the portion of the trial court's reformed decree of divorce regarding child support be **reversed** and the cause **remanded** for further proceedings in accordance with the opinion of this court; that in all other respects, the reformed decree of divorce of the trial court is **affirmed**; and that all costs of this appeal are hereby adjudged against the Appellee, **PAUL DANIEL STUCKI**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J. and Griffith, J.*