

## NUMBER 13-10-00677-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

LISBETH ESPARZA,                                                                     Appellant,

v.

EDWARD ESPARZA,                                                                     Appellee.

### On appeal from the 24th District Court
### of DeWitt County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Vela

This is an appeal from a final divorce decree. The trial court awarded appellee, Edward Esparza, sole managing conservatorship over T.E, the couple's only child. Appellant, Lisbeth Esparza, argues that the trial court abused its discretion by: (1) denying her request for jury trial; (2) naming Edward the sole managing conservator; and

(3) making an inequitable distribution of property.   We affirm.

## I. PROCEDURAL BACKGROUND

Lisbeth is a citizen of Colombia.   She and Edward were married on March 30, 2001 in Colombia.   They obtained dual citizenship for T.E. and, in August 2001, moved to Cuero.   During the time they were married, they co-owned a natural supplement business called "Ancient Remedies."   Edward filed a petition for divorce on December 12, 2008, alleging that the marriage had become insupportable.   Lisbeth filed a counter-petition on December 17, 2008, alleging both insupportability and cruelty.   The case was set on the docket for January 20, 2009, but was reset, by Rule 11 agreement, to the non-jury docket for February 5, 2009.   *See* TEX. R. CIV. P. 11.

On March 13, 2009, the parties entered into a second Rule 11 agreement that placed the case "on hold."   On June 11, the trial court signed an ex parte emergency order, ordering Lisbeth to surrender the child to Edward and making Edward the temporary sole managing conservator because Lisbeth had failed to return the child at the conclusion of a visitation period.   In July 2009, the case was placed on the dismissal docket.   The parties signed an order agreeing to a trial date of November 24, 2009 on the non-jury docket.   On November 24, 2009, the trial court granted Lisbeth's motion for continuance.

The case was reset for January 20, 2010, again on the non-jury docket.   On December 21, 2009, Lisbeth filed a request for jury trial.   The trial court held a hearing with respect to Lisbeth's request.   At the hearing, the trial court took judicial notice of the previous proceedings with respect to all prior trial settings as well as continuances.

Counsel for Edward testified at the hearing that his client had incurred fees in excess of $2,000.00 as a result of previous continuances. He opined that the "resetting of this case on a jury docket will result in further delays because it would not have precedence." Counsel stated that he believed that if the case were to go to a jury it would be delayed another four to six months. He pointed out that the Office of Court Administration stated that family law cases are to be tried within six months of filing. He also opined that all delays were as a result of Lisbeth's conduct. The trial court denied the request for jury trial.

The case proceeded to trial as a non-jury matter. The trial court entered judgment that Edward would be the sole managing conservator and it also made a property division. Lisbeth filed a motion for new trial and subsequently filed her notice of appeal.

## II. ANALYSIS

### A. Denial of a Jury Trial

Lisbeth urges in her first issue that she was deprived of the right to trial by jury. *See* TEX. CONST. ART. 1, § 15; TEX. FAM. CODE ANN. § 6.703 (West Supp. 2011). To be entitled to a jury trial, a party must make a jury request in writing, filed with the clerk of the court, within a reasonable time before the date set for trial, but not less than thirty days before trial. TEX. R. CIV. P. 216(a). A request is presumed timely if it was filed more than thirty days before the actual trial date. *See Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex. 1991). However, the trial court has the discretion to determine what amount of time is reasonable, dependent upon the individual circumstances. *Girdner v. Rose*, 213 S.W. 3d 438, 439 (Tex. App.—Eastland 2006, no pet.) (holding that request was untimely

3

because it was made more than two years after suit was filed and less than forty-five days before the fifth trial setting). The party opposing the jury request may rebut the presumption that the request was timely by showing a jury trial will: (1) injure the party; (2) disrupt the trial court's docket, or (3) impede the ordinary handling of the court's business. *Id.*; *Crittendon v. Crittendon*, 52 S.W.3d 768, 769 (Tex. App.—San Antonio 2001, pet. denied); *see Tex. Oil & Gas Corp. v. Vela*, 429 S.W.2d 866, 877 (Tex. 1968); *Southern Farm Bureau Cas. Ins. Co. v. Penland*, 923 S.W.2d 758, 760 (Tex. App.—Corpus Christi 1996, no writ); *Grossnickle v. Grossnickle*, 865 S.W.2d 211, 212 (Tex. App.—Texarkana 1993, no writ).

In response to Lisbeth's argument, Edward claims that her request for jury trial was untimely because it was not filed until the thirtieth day before trial and was late. We will assume for purposes of resolution of this issue that the request was timely. Here, Edward offered evidence that the case: (1) was on the dismissal docket since August 2009; (2) had been on file beyond the limit prescribed the Texas Supreme Court for resolving family law cases; (3) there were pretrial orders setting the case on the non-jury docket; (4) if the case was transferred to the jury docket it would be further delayed; and (5) attorney's fees were mounting because of the delay. Given the evidence presented by Edward, we cannot say that the trial court abused its discretion. We overrule issue one.

**B. Sole Conservatorship**

By issue two, Lisbeth argues that the trial court abused its discretion in naming Edward the sole managing conservator of the child because Edward did not rebut the

4

presumption that conservatorship should be joint. In determining conservatorship, the child's best interest shall be the primary consideration. *Stucki v. Stucki*, 222 S.W.3d 116, (Tex. App.—Tyler 2006, no pet.). A trial court's judgment will be reversed only if it appears that the trial court has abused its discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). Section 151.131(b) of the Texas Family Code provides: "It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection." TEX. FAM. CODE ANN. § 153.131(b) (West 2008). In addition, with respect to conservatorship, section 153.134 utilizes the following factors in determining if the appointment of the parties as joint managing conservators would be in the child's best interest:

> If a written agreed parenting plan is not filed with the court, the court may render an order appointing the parents joint managing conservators only if the appointment is in the best interest of the child, considering the following factors:
>
> > (1) whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;
> >
> > (2) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;
> >
> > (3) whether each parent can encourage and accept a positive relationship between the child and the other parent;
> >
> > (4) whether both parents participated in child rearing before the filing of the suit;
> >
> > (5) the geographical proximity of the parents' residences;
> >
> > (6) if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate

the primary residence of the child; and

(7) any other relevant factor.

TEX. FAM. CODE ANN. § 153.134.

Lisbeth argues that there was a lack of evidence rebutting the presumption of joint conservatorship, and the court failed to consider evidence of family violence. Edward counters that the trial court could have reasonably found that the conflict between Lisbeth and Edward would continue, they would be unable to agree on issues affecting the child's welfare, Lisbeth would not encourage or accept a positive relationship between Edward and the child, and the mutual distrust between the parties would undermine the underlying principles of joint managing conservatorship.

The evidence shows Lisbeth lost primary conservatorship of the child after an incident in which she caught Edward embracing another woman. At that time, she left Cuero with her brother and went to Houston for a time and also to Louisiana. At the time of trial, she had moved back to the Victoria/Cuero area. Lisbeth claims that Edward would not let her take the child with her at that time. She testified that she thought that Edward having custody of the child was merely temporary.

The evidence with respect to awarding Edward primary custody came mainly from Lisbeth, Edward, Lexey Fender, the child's therapist, and Catherine Parsons Key, who oversaw Lisbeth's visits with the child. Other friends and business patrons also testified.

Fender testified that the child had fears about her mother and had been overly reprimanded by Lisbeth. According to Fender, the child has the strongest bond with Edward. She opined that it would be detrimental to the child to be away from Edward.

Fender testified that Lisbeth cannot regulate her emotions, has surreptiously followed Edward and the child, and has done retaliatory things. She does not believe that Lisbeth has the ability to work with Edward. Fender described Lisbeth's behavior as erratic. She testified that she saw no indications that Edward suffered from alcohol problems. Fender did not recommend that Lisbeth have unsupervised visitation.

Edward testified that Lisbeth took the child from him during a period of visitation and did not return her. He discussed incidents where Lisbeth would sneak around to see the child. Edward described Lisbeth as unstable and said that he thought he should be given primary custody of his daughter.

Lisbeth testified that she was the primary caregiver for her daughter before losing primary custody of the child. She left the daughter with Edward after seeing him in the embrace of another woman. According to Lisbeth, Edward told her to leave. She testified that Edward was abusive and controlling during their marriage. Edward told her that he was recording her telephone conversations, pulled her hair, pushed her, and, on one occasion he put a pistol to her forehead. Lisbeth said she was afraid of Edward. According to Lisbeth, Edward told her he was going to take the child away from her and she would not see her again. She described Edward as a heavy drinker and indicated that most of the incidents of violence occurred when he was drinking.

On cross examination, Lisbeth said she had not taken her daughter with her when she left because of the previous incident involving the gun. She did not file charges against Edward or produce independent evidence to corroborate that Edward had been violent toward her. Lisbeth sought help at a shelter for abused women in 2009, when

she claimed that the child told her she had seen some sort of sexual activity occurring between Edward and another woman. It is uncontroverted that Lisbeth had not previously sought help from a woman's shelter from March 2000 through their separation in December, 2008.

Katherine Parsons Key, a licensed therapist, said she never saw Lisbeth acting erratically and she had no trouble controlling her emotions. Key said that Lisbeth and the child got along well and seemed to love one another.

Other witnesses who testified on behalf of the parties testified that there was no indication that Edward was abusive and that both Edward and Lisbeth seemed to be good parents and good people.

The fact finder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The fact finder is free to believe one witness and disbelieve another and reviewing courts may not impose their own opinions to the contrary. *Id.* Accordingly, reviewing courts must assume that the fact finder decided all credibility questions in favor of the verdict if a reasonable person could do so. *Id.* If a reasonable finder of fact could have done so, we must assume that the finder of fact chose what testimony to disregard in a way that was in favor of the verdict. *Id.* When the parties offer conflicting evidence regarding the same encounter, the fact finder is the sole judge of the weight and credibility of the evidence. *Garner v. Garner,* 200 S.W.3d 303, 310 (Tex. App.—Dallas 2006, no pet.).

Here, the evidence was conflicting both with respect to the issue of sole managing conservatorship and the existence, or not, of family violence. It is clear that the trial court found the testimony of Fender to be credible over that of Lisbeth and her other witnesses. There was evidence offered that would have allowed the trial court, in its discretion, to decide that it was not in the best interest of the child to have the parents as joint managing conservators. There was continuing strife between Lisbeth and Edward. Edward testified the he did not think the parties could agree on issues affecting the welfare of the child, including educational and health care issues. The evidence demonstrated that there was a mutual distrust between Lisbeth and Edward. While we, as an appellate court, might have decided the issue differently from the trial court, as the sole judge of the weight and credibility of the evidence, the trial court could choose to reject Lisbeth's version of events and could reasonably conclude that she failed to establish a history or pattern of physical abuse by Edward. *Hinkle v. Hinkle*, 223 S.W.3d 773, 782 (Tex. App.—Dallas 2007, no pet.); *Burns v. Burns*, 116 S.W.3d 916, 920 (Tex. App.—Dallas 2003, no pet.). Without credible evidence of a history or pattern of physical abuse by Edward against Lisbeth, section 153.004(b) of the family code did not prohibit the appointment of Edward as sole managing conservator of the children. *See Coleman v. Coleman*, 109 S.W.3d 108, 111 (Tex. App.—Austin 2003, no pet.). We overrule issue two.

## C. Division of Community Property

By Lisbeth's third issue, she argues that the trial court erred in dividing the couple's community property. Specifically, she urges that the trial court awarded Edward most of

the community property without taking into consideration Edward's infidelity and abusive treatment.

In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage. TEX. FAM. CODE ANN. § 7.001 (West 2006). The factors to be considered in the trial court's division of the estate include: (1) fault in breaking up the marriage; (2) the spouses' capacities and abilities; (3) business opportunities; (4) education; (5) relative physical conditions; (6) relative financial conditions and obligations; (7) disparity of ages; (8) sizes of separate estates; (9) the nature of the property; and (10) disparity in earning capacities or incomes. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981).

The trial court has broad discretion in dividing the marital estate at divorce. *See id.* at 699. On appeal, we presume that the trial court exercised this discretion properly and will reverse the cause only where there is a clear abuse of discretion. *See Bell v. Bell,* 513 S.W.2d 20, 22 (Tex. 1974). A clear abuse of discretion is shown when the division of the property is manifestly unjust. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex. 1980). "The party attacking the property division bears the heavy burden of showing that the trial court's property division was not just and right." *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied).

The evidence of the value of the assets was presented primarily by Edward, who admitted an inventory into evidence. During their marriage, Edward and Lisbeth co-owned a business called Ancient Remedies, which sold herbal supplements.

10

Lisbeth, a licensed medical doctor in Colombia did many of the consultations with clients, while Edward ran the business. She and Edward obtained certificates in natural medicine because Lisbeth was not licensed to practice medicine in the United States. The couple also owned a business called "Old World Chandeliers & Iron." Lisbeth argues that the inventory at Old World Chandeliers & Iron was worth over $100,000.00, but Edward estimated the value of the inventory at $3,500.00. The parties' taxable earnings, reflected in their 2007 and 2008 tax returns were $44,907.00 and $42,825.00. In 2009, Lisbeth began to compete with Ancient Remedies for business at another location. At the time of the trial, gross revenues for Ancient Remedies were $11,000.00 and $12,000.00 per month. Prior to that time, they had been higher. Neither party filed income taxes for those years. The trial court ultimately chose to award Edward the residence that the couple valued at $48,000.00, all clothing and jewelry in his possession, all household furniture, fixtures, goods, art objects, appliance and equipment in his control, all sums of cash in his possession, a leased 2006 Hummer, and the Ancient Remedies business. The court also awarded debt to Edward, which amounted to $92,320.45, according to his inventory. The court awarded Lisbeth all household furniture, fixtures, goods, art objects, collectibles, and equipment in her control, all clothing, jewelry in her possession, a Jeep Wrangler, and the business equipment in her possession.

With respect to "Old World Chandeliers and Iron," the court ordered the inventory sold and the funds applied to the parties' joint income tax liability for 2007, 2008, and 2009. Any net proceeds remaining were ordered divided equally between the parties.

11

As stated earlier in the opinion, the trial court obviously did not find Lisbeth's testimony regarding abuse credible. Thus, in making its property decision, the trial court could properly have considered awarding the residence to Edward because he was to be the child's sole managing conservator. The court might have awarded the Ancient Remedies business to Edward because Lisbeth was already employed by a competitor. Edward testified that the business had faltered since Lisbeth had left. We cannot say that the trial court abused its discretion in dividing the marital assets or the division was manifestly unfair. We overrule issue three.

## III. CONCLUSION

Having overruled all issues raised by appellant, we affirm the judgment of the trial court.

ROSE VELA
Justice

Delivered and filed the
28th day of June, 2012.