COURT OF APPEALS

                                                 SECOND DISTRICT
OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-123-CV

 

 

ROBIN PEARSON                                                                              APPELLANT

 

                                                             V.

 

CHARLES STEWART                                                                           APPELLEE

 

                                                       ------------

 

              FROM
THE 322ND DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------








This
appeal challenges the child support provisions in an agreed decree of divorce
and a separate order imposing rule 13 sanctions.  Tex. R. Civ. P. 13.  In her first issue, appellant Robin Pearson
contends that the trial court erred by overruling her rule 329b(g) motion to
modify, correct, or reform the agreed decree to adjust the monthly amount of
child support payable by appellee Charles Stewart because of the parties=
alleged mistake in calculating his 2009 income and bonuses.  Tex. R. Civ. P. 329b(g).  In her second issue, Pearson challenges the
trial court=s
imposition of $850 in attorney=s
fees against her as sanctions for filing a groundless pretrial motion to extend
the time to mediate.  Because we hold
that the trial court did not abuse its discretion by denying the motion to
modify, correct, or reform the agreed decree, we affirm the agreed decree.  But because the evidence in the record does
not support a sanctions award against Pearson, we reverse the trial court=s
award of sanctions.

                                            Procedural
Background

Pearson
and Stewart entered into an agreed divorce decree after a hearing on January
30, 2009.  The trial court signed the
decree the same day.  The decree provided
that Stewart would pay $789.17 per month in child support, payable biweekly in
installments of $364.24.[1]

Before
the hearing, Stewart had filed a motion for sanctions alleging that Pearson=s
counsel had filed a groundless and frivolous Motion for Extension of Time to
Mediate two weeks previously.  See
Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code Ann. ''
9.012, 10.001 (Vernon 2002).  That motion
remained pending after the trial court signed the agreed decree.








Pearson
timely filed a Motion to Modify, Correct, or Reform Decree, contending that the
parties incorrectly calculated Stewart=s
net resources for child support purposes based on a mistaken reading of his
2008 W-2, the erroneous inclusion of six months of a lower base pay, and the
reliance on that base pay in calculating Stewart=s
future bonus payments.  After a hearing,
the trial court denied the motion under section 156.401 of the family code,
stating that Athe
circumstances of the child or a person affected by the order have not
materially and substantially changed since the date of the order=s
rendition on January 30, 2009[,] and . . . it has not been three years since
the order was rendered or last modified.@  The trial court stated at the hearing that Awe
ignore [civil procedure rule 329b] when we have specific rules in the Texas
Family Code that . . . specify that  . . . they are more
specific as to the limitations and the time periods . . . than is approved
under 329(b) [sic] of the Texas Rules of Civil Procedure.@

Four
days after the hearing, at which the trial court also heard argument on Stewart=s
sanctions motion, the trial court ordered Pearson to pay Stewart, through his
attorney of record, $850 in attorney=s
fees as sanctions.  The trial court
specifically found that the Motion for Extension of Time to Mediate Afiled
by@
Pearson=s
attorney was Agroundless
and filed in bad faith for the purpose of harassment or for needless delay
under Tex. R. Civ. P. 13.@  Pearson appealed from both the trial court=s
denial of her motion to modify and the sanctions order.

                     Motion to Modify,
Correct, or Reform Agreed Decree








In
her first issue, Pearson claims the trial court abused its discretion by either
refusing to hear her Motion to Modify, Correct, or Reform Decree or by denying
it.  According to Pearson, the motion to
modify was brought under rule 329b(g) and therefore the trial court was
required to hold an evidentiary hearing on the motion.  Instead, the trial court agreed with Stewart=s
counsel=s
contention that such a motion could not be brought unless the requirements of
section 156.401 of the family code were met. 
Pearson thus contends that the trial court was not only incorrect in
deciding that section 156.401 Atrumps@
rule 329b post-trial motions but also in failing to hold an evidentiary hearing
on her motion.  Pearson further contends
that, notwithstanding the trial court=s
incorrect application of section 156.401, the trial court should have granted
her motion because she proved that the parties were mistaken in their
calculation of child support.

Rule
329b(g) provides that a motion to modify, correct, or reform a judgment may be
filed within the same time periods as a motion for new trial and extends the
trial court=s
plenary power in the same manner as a motion for new trial.  Tex. R. Civ. P. 329b(g).  The motion must be in writing and must
specify how the recently rendered judgment should be modified, corrected, or
reformed.  Id.  A party may file a rule 329b motion solely
for the purpose of extending the trial court=s
plenary power.  See Old Republic Ins.
Co. v. Scott, 846 S.W.2d 832, 833 (Tex. 1993) (op. on reh=g).

Family
code section 156.401 provides that a trial court

may
modify an order that provides for the support of a child . . . if:

 

(1)
the circumstances of the child or a person affected by the order have
materially and substantially changed since the earlier of:

 

(A)
the date of the order=s rendition; or

 








(B)
the date of the signing of a mediated or collaborative law settlement agreement
on which the order is based; or

 

(2)
it has been three years since the order was rendered or last modified and the
monthly amount of the child support award under the order differs by either 20
percent or $100 from the amount that would be awarded in accordance with the
child support guidelines.

 

Tex. Fam. Code Ann. ' 156.401
(Vernon 2008).  The purpose of section
156.401 is Ato
prevent vexatious litigation of such matters as custody and support.@  Moreland v. Moreland, 589 S.W.2d 828,
829 (Tex. App.CDallas
1979, writ dism=d) (construing prior version
of statute); see In re S.E.K., 294 S.W.3d 926, 928 (Tex. App.CDallas
2009, pet. denied) (noting that chapter 156 was enacted to prevent constant
litigation in child custody cases).








Here,
Pearson timely filed her motion to modify within the trial court=s
plenary power, alleging that although the parties had agreed that child support
should be calculated based on Stewart=s
most recent available salary and bonus information, they mistakenly used
inaccurate information to make that calculation and that because of that
mistake, the child support provision of the agreed decree should be modified to
reflect the true agreement of the parties. 
Because the agreed decree involved the first determination of child
custody issues between the parties, it was governed by chapter 153 of the
family code, not chapter 156.  See In
re P.D.M., 117 S.W.3d 453, 455B56
(Tex. App.CFort
Worth 2003, pet. denied) (en banc). 
Chapters 153 and 156 are distinct statutory schemes that involve
different issues.  In re V.L.K.,
24 S.W.3d 338, 343 (Tex. 2000); S.E.K., 294 S.W.3d at 928.  Because section 156.401 does not apply to
original suits involving child custody, it likewise cannot apply to post-trial
329b motions in such original suits. 
Thus, we conclude and hold that in an original child custody suit
governed by chapter 153 of the family code, family code section 156.401 does
not prohibit a party from filing, nor a trial court from considering, a rule
329b(g) motion brought timely within that court=s
plenary power.  See In re V.L.K.,
24 S.W.3d at 343; P.D.M., 117 S.W.3d at 455B56.  The trial court erred by so holding.

Even
though the trial judge erred by overruling Pearson=s
motion to modify based on its failure to meet the requirements of section
156.401, we nevertheless conclude that the trial court did not err by
overruling the motion.

Even
an agreed decree may be reformed for mutual mistake.  See Hawkins v. Howard, 97 S.W.3d 676,
679 (Tex. App.CDallas
2003, no pet.); Weynand v. Weynand, 990 S.W.2d 843, 846 (Tex. App.CDallas
1999, pet. denied); Pate v. Pate, 874 S.W.2d 186, 188 (Tex. App.CHouston
[14th Dist.] 1994, writ denied).  To be
entitled to reformation based on mutual mistake, a party must prove that there
has been Aa
definite agreement between the parties that has been misstated in the written
memorandum because of a mistake common to both contracting parties.@  Pate, 874 S.W.2d at 188.













At
the hearing, the trial court heard argument from both Pearson=s
and Stewart=s
counsel regarding the agreement as to child support, which was reached in the
trial judge=s
chambers.  Pearson contended that the
parties intended to use Stewart=s
projected 2009 salary, which could not be projected from the 2008 W-2 because
of the lower salary Stewart was making during the first half of 2008 and also
because the W-2 gross earnings did not reflect amounts that had been taken out
for health insurance.  But Stewart=s
counsel argued that the parties did use a pay stub and bonus information from
January 2009 to project Stewart=s
salary for 2009; in other words, they did not use only the 2008 W-2 information
and, thus, did not mistakenly calculate the child support amount.  Pearson offered the W-2s for 2008 and 2007
into evidence but not the 2009 pay stubs.[2]  Accordingly, we conclude and hold that
Pearson failed to meet her burden of proving that the parties had a definite
agreement that was misstated in the decree and, thus, that the trial court did
not abuse its discretion by overruling the 329b(g) motion to modify.[3]  See Pate, 874 S.W.2d at 188; see
also Davis v. Shanks, 911 S.W.2d 390, 396 (Tex. App.CTexarkana
1994) (holding that nonuse of powers granted by rule 329b is reviewed for abuse
of discretion), rev=d on
other grounds, 898 S.W.2d 285 (1995); Ferguson v.
Naylor, 860 S.W.2d 123, 127 (Tex. App.CAmarillo
1993, writ denied) (AThe powers enumerated in
Rule 329b are inherent in the trial court and their use will not be disturbed
on appeal absent a clear abuse.@).

We
overrule Pearson=s first issue.

                                                Rule
13 Sanctions

In
her second issue, Pearson challenges the trial court=s
award of $850 in attorney=s fees to Stewart as
sanctions against Pearson for filing a groundless pleading under rule 13.  Tex. R. Civ. P. 13.

Standard of Review

We
review a trial court=s imposition of sanctions
under rule 13 for an abuse of discretion. 
Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007); Cire v.
Cummings, 134 S.W.3d 835, 838 (Tex. 2004). 
To determine whether a trial court abused its discretion, we must decide
whether the trial court acted without reference to any guiding rules or
principles; in other words, we must decide whether the act was arbitrary or
unreasonable.  Low, 221 S.W.3d at
614; Cire, 134 S.W.3d at 838B39.








In
determining whether the trial court abused its discretion, we must first ensure
that there is a direct relationship between the improper conduct and the
sanction imposed; in other words, we examine whether punishment was imposed
upon the true offender, whether it was directed against the abuse, and whether
it was tailored to remedy any resulting prejudice.  Low, 221 S.W.3d at 614; TransAm.
Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991); see also
GTE Commc=ns Sys. Corp. v. Tanner,
856 S.W.2d 725, 731 (Tex. 1993) (holding that rule 215=s
requirement that sanctions be Ajust@ is
equivalent to rule 13=s requirement that they be Aappropriate@).  Thus, the trial court must determine whether
sanctions should be imposed on the party, its counsel, or both.  Am. Flood Research, Inc. v. Jones, 192
S.W.3d 581, 584 (Tex. 2006) (ASanctions
may be visited exclusively on the attorney if the evidence demonstrates that
the offensive conduct is attributable to counsel alone.@); TransAm.,
811 S.W.2d at 917.  Second, the court
must make certain that less severe sanctions would not have been sufficient to
promote compliance.  Am. Flood
Research, Inc., 192 S.W.3d at 583; TransAm., 811 S.W.2d at 917.

Rule 13 provides as follows:

The
signatures of attorneys or parties constitute a certificate by them that they
have read the pleading, motion, or other paper; that to the best of their
knowledge, information, and belief formed after reasonable inquiry the
instrument is not groundless and brought in bad faith or groundless and brought
for the purpose of harassment. . . .  If
a pleading, motion or other paper is signed in violation of this rule, the
court, upon motion or upon its own initiative, after notice and hearing, shall
impose an appropriate sanction available under Rule 215, . . . upon the person
who signed it, a represented party, or both.








Tex. R. Civ. P. 13.  Rule 13 defines Agroundless@ as
having Ano
basis in law or fact and not warranted by good faith argument for the
extension, modification, or reversal of existing law.@  Id.; In re A.S.M., 172 S.W.3d
710, 717 (Tex. App.CFort Worth 2005, no pet.).

Generally,
courts presume that pleadings and other papers are filed in good faith.  Low, 221 S.W.3d at 614; In re A.S.M.,
172 S.W.3d at 717.  The party seeking
sanctions bears the burden of overcoming this presumption of good faith.  Low, 221 S.W.3d at 614; GTE Commc=ns
Sys. Corp., 856 S.W.2d at 731. 
Improper motive is an essential element of bad faith.  Parker v. Walton, 233 S.W.3d 535, 540
(Tex. App.CHouston
[14th Dist.] 2007, no pet.); Wallace v. Inv. Advisors, Inc. 960 S.W.2d
885, 889 (Tex. App.CTexarkana 1997, pet.
denied).  Bad faith is not simply bad
judgment or negligence but the conscious doing of a wrong for a dishonest,
discriminatory, or malicious purpose.  Keith
v. Solls, 256 S.W.3d 912, 916 (Tex. App.CDallas
2008, no pet.); Parker, 233 S.W.3d at 540.  @=Harass= is
used in a variety of legal contexts to describe words, gestures, and actions
that tend to annoy, alarm, and verbally abuse another person.@  Keith, 256 S.W.3d at 916B17; Parker,
233 S.W.3d at 540.

Applicable
Facts

Pearson=s
counsel mailed the Motion for Extension of Time to Mediate that is the basis of
the sanctions motion on January 14, 2009, the last day set in the pretrial
scheduling order for the parties to mediate. 
The case had been set for trial on January 30, 2009 since November 7,
2008.  The motion to extend indicates
that








[n]umerous
requests have been made to [Stewart] regarding obtaining copies of his payroll
records, to which there has been no response. 
Eventually, a Subpoena was served on his employer=s parent
corporation.  Those records are being
gathered and are expected to be received by January 29th.  Mediation cannot be conducted in good faith
without complete and accurate payroll records.

 

Only counsel signed the
motion, which contains a Certificate of Conference stating, AI
hereby certify that a call was made to [counsel for respondent] and no
objection was made to the filing of this Motion for Extension of Time to
Mediate.@[4]

Although
the trial court granted the motion to extend time to mediate, it did not
continue the trial date, nor did any party request that it do so.

Stewart=s
motion for sanctions begins by asking the trial court to impose sanctions
against Pearson=s attorney for filing a
groundless pleading in violation of rule 13 and section 9.012 of the civil
practice and remedies code and a frivolous pleading in violation of section
10.001 of the civil practice and remedies code. 
In the AFacts@
section of the motion, it states

5.       [Pearson]
alleges in paragraph (1.) of the Motion [for Extension of Time to Mediate] that
Anumerous requests
have been made to [Stewart] regarding obtaining copies of his payroll records, to
which there has been no response@. (Exhibit No. 1)

 

6.       This
statement is an absolute fabrication and MISREPRESENTATION OF FACT TO THIS
COURT.  Despite the fact that
[Pearson] never filed a request for production or any other discovery request,
[Stewart] has provided copies of the pay stubs and tax documents to [Pearson=s] Attorney on SEVEN
separate occasions . . . .








What follows is a list of
all the related documents that Stewart=s
counsel provided to Pearson=s
counsel between May and December 2008, over forty different items.

 Attached to the motion for sanctions as an
exhibit is a December 19, 2008 letter from Stewart=s
counsel to Pearson=s stating,

In addition to numerous
faxes to your office of his pay-stubs, at the September 5, 2008 court
appearance I provided you with a packet containing all of Charles=s
pay and bonus check stubs to date, with the exception of checks for the
pay-periods of January 17-30, 2008, June 19-July 2008.  Please note that every pay stub has the
YEAR-TO-DATE amount.  This includes all
of his bonus checks.  You can verify this by subtracting the gross
bonus from the gross year to date on the regular pay-stub for the subsequent
pay-check.  Your insistence that
Charles is somehow hiding his bonuses is absolutely unfounded.  Every penny that Charles is paid through his
employment is reported in the year-to-date column. Therefore, his bonuses are
included in the calculation of his child support obligation.

The letter also states that
paystubs for several pay periods between October 23, 2008 and December 17, 2008
are attached.  The letter closes by
reminding counsel of the mediation deadline and suggesting a mediator.  Also attached are numerous fax cover sheets
dated from July to September 2008, with copies of attached pay stubs.








On December
19, 2008,[5]
a subpoena was issued to Stewart=s
employer compelling production of all copies of Stewart=s
Statement of Earnings and Deductions for all periods prior to June 7, 2007; all
periods between June 20, 2007 and July 19, 2007; all periods between December
5, 2007 and December 20, 2007; all periods after June 18, 2008; and all ABonus@
periods or periods for which the pay was other than ARegular.@  The subpoena also compelled production of a
copy of Stewart=s 2008 W-2 and A[a]ll
other employment and pay records relating to@
Stewart.

On
December 29, 2008, Pearson=s
counsel sent a letter to Stewart=s
counsel stating,

Of
the dates you have suggested, Tuesday, January 13, 2008 [sic] works best for
me.  However, that would be subject to my
receipt of the documents requested from Mimi=s
Cafe=s
parent corporation.  It has up to 30 days
to produce those documents, but it may produce them early, in which case I
could make those dates. Otherwise, it may be as late as the 21st before the
documents are produced.  So, you may want
to make tentative arrangements for us to mediate on the 13th, but make sure
that the mediator understands that it is subject to my receipt of the
subpoenaed documents.








At
the hearing on the sanctions motion, the trial court apparently took judicial
notice of the documentation attached to Stewart=s
motion for sanctions, which included copies of correspondence with Pearson=s
counsel, including copies of pay stubs provided to him.[6]  Stewart then testified that he first retained
his counsel around May 2008 and that Aon
numerous occasions,@ he sent payroll information
to her office so that she could provide it to Pearson=s
counsel.  He acknowledged that his
counsel had copied him on that correspondence. 
He also agreed that, to his knowledge, no formal discovery had ever been
filed asking for those documents other than two subpoenas on his employer=s
corporate office.  According to Stewart, Athe
legal department of SWH Corporation notified [him] that [his] payroll records
were requested and asked if [he] would release them, and [he] said yes.@  This was before the December 2008 subpoena,
but Stewart could not remember when.[7]  He was notified in January 2009 that the
records had been subpoenaed again.  When
asked if he had formed an opinion about Pearson=s
concerns over the course of the suit, he answered that AI
believe that they, or my ex-wife, thinks that I was hiding several thousand
dollars, because I was not turning over every single paycheck.@  He then admitted that he did not give his
counsel every pay stub, stating, AI=m
not in the habit of keeping my check stubs. 
I=m
surprised I had as many as I did.@

The
court initially denied Stewart=s
sanctions motion.  But the court allowed
further argument from both parties. 
Stewart argued that the basis of the motion to mediate was a Asubstantial
misstatement of fact@ that no payroll information
had been provided despite counsel=s
providing Pearson=s counsel with such
information over the course of several months. 
Counsel also argued,

And I believe that the evidence shows from my
exhibits and from Mr. Stewart=s testimony and the
filings before you that he in fact did know that this was a groundless
pleading.

 

And
I would argue, Your Honor, that this was filed as a means to delay or harass my
client, who they continually accuse of hiding money, yet it=s
not shown on any of the - - they have not been able to produce any evidence of
that and they have not even filed discovery. 
So, I just think they are trying to delay this to last even longer so
maybe something would appear.








Pearson=s
counsel admitted that he did receive a Aseries
of productions@
from Stewart=s
counsel but that Athere were also big holes in
what was being produced.@  He explained,

As we moved well into >08, there were still
records from >07 that I had not
received and I could see I was unable to reconcile the - - the numbers that
were being presented to me with the W-2 and felt that I should have an entire
set of those documents.

 

Now, I did, early on when I was not getting
the records, did subpoena the employer and [Stewart=s counsel] stepped in
at that point in time and said, you don=t need to do that, I will provide those
documents to you.

 

He also admitted that after
Stewart had hired counsel,

[s]he came in, did the appropriate thing and
contacted me and said, you don=t need to follow
through with the subpoena; we will provide them to you.  And she did do a good job of providing them
to me and I have no reason to think that she didn=t provide me with
everything that she had.  But we didn=t have everything.

 

And as that went on into the fall, at least
in September I wrote her and said, I=m still needing these remaining pay records.

 

In November I wrote to her and said, I=m still missing 13 of
the pay records.  I think at some point
after that I said, we are still missing 17 pay records.

 

As we got into December, we are getting some
pay records during that time, but we are still missing pay records.  As of December 19 we are missing 18 pay
records.  We got some that date and
dropped it down to 13.

 

But as we were getting closer to trial date,
it was appearing that we were not going to be able to get all of the pay
records.  And I understand that Mr. Stewart has lost them.  I can=t find all my credit card statements.  You know, I understand that.

 








But
we still felt like we needed those pay records.

He also admitted that he did
not participate in any formal discovery.

In
describing the thirteen missing records, Pearson=s
counsel stated that some of them were from late 2007 and some were from
throughout 2009.  He said that Stewart=s
counsel had acknowledged that those records were still missing each time she
sent new ones, and that is why he issued the subpoena in December because he
realized those were apparently permanently lost.  He did not receive them in response to the
subpoena until the morning of trial.

According
to Pearson=s
counsel,

[i]t was something that because of the
history of the case, something that I felt I needed to have a complete
picture of.  I needed to have a complete
picture for my client.

 

My client was very concerned about not
getting the appropriate amount of child support and I felt like I needed the
entire picture.

 

Now, counsel stated that - - that the motion
was filed at the last minute, and that is true. 
I knew that the date that our motion to extend was filed was the last
date in this court=s order that we were
to have mediated.

 

And the motion to extend was not to delay the
trial; was not to prejudice anybody; did not require anybody else=s time, just simply
to say can you give us some more time to mediate, because at that point in time
I still did not have those records from ‑ ‑ from the employer,
which is what I was wanting so I could sit down and in good faith and full
knowledge, sit down and mediate the case.

 








So, that=s what that was about, and that=s all it was about
was to give us more time to mediate.  And
the records in there, although not stated well because it should say is
outstanding in there, but it didn=t say outstanding in the motion.  But that=s what we were searching for, these items
that we'd been asking for for sometime apparently did not exist, apparently Ms.
Estrada didn=t have them and
apparently Mr. Stewart [didn=t either].

 

I=m not even blaming Mr. Stewart.  We loose [sic] things and ‑ ‑ but
we felt like we needed them to have the complete picture.

 

And so that=s what the motion was
filed for. . . . 

 

Was this overkill?  It may have been overkill in terms of the
document production.  But I could also have buried them in
interrogatories and requests for admissions and all that kind of stuff.  That was not my intent.  If that had been my intent, I know how to
paper discovery.  

 

But I had Ms. Estrada's representation that
she would send me the documents she had, and I believe that she did.  But there were still some missing, and that=s what we were trying
to get to.

 

. . . .

 

There was no 
- - no indication in anyway of that motion could have harrassed [sic]
the respondents at all.  That is they
weren=t - - we didn=t have a deposition -
- we didn=t have a mediation
date on the day that was filed.  I was -
- it was not - - we had not mediated.

 

.
. . . 

 

I did not feel like it was appropriate just
to simply ignore that date, and so that=s what the motion to extend time was intended
to do, is to not ignore what the court had ordered and to get some extra time
to hopefully get some documents so that we could mediate at that time.

 

That created no prejudice to [Stewart].  They hadn=t mediated yet and that was giving them more
time to get that done.

 

[Emphasis added.]








Stewart=s
counsel pointed out that not all of the pay stubs were necessary because
Pearson=s
counsel had Stewart=s W-2s for 2007 and 2008,
and he could have calculated Stewart=s
pay with that information and the existing pay stubs.

After
the hearing, the trial court ordered sanctions specifically under rule 13,
stating, AThe
Court finds that Rule 13 would support a groundless [sic] and brought for the
purpose of harassment and needless delay as well.@[8]  However, the trial court sanctioned Pearson
herself, stating

I=m
sanctioning [Pearson] for $850 to be paid to Mrs. Estrada for the harassment
and delay, and needlessly increasing the cost of litigation caused with the
request for information on the payroll records that you have [been] privy to
and that could have determined the child support amounts from that.  I find that was excessive and needless and
increased costs for the other side unnecessarily.

Analysis








Pearson
contends that there is no evidence to support a finding that she acted in bad
faith.[9]  The only evidence regarding Pearson=s
involvement is Stewart=s testimony that she became
convinced he was hiding money.  But there
is no evidence regarding her knowledge of or complicity in the filing of the
motion at issue.  Her counsel did not
indicate that she approved of the filing, and although he referenced her fear
that Stewart was not being forthcoming with his financial information, he
stated that he needed the records to get a complete picture for his
client, even though he could have gleaned the needed information from the
documentation already provided him. 
Here, the conduct at issue is clearly that of Pearson=s
counsel and not of Pearson herself, other than her reliance on his
representation.[10]  Thus, there is no evidence of any improper
motive on Pearson=s part in filing the
motion.  Accordingly, we conclude and
hold, on the facts of this record, that Stewart failed to overcome the
presumption of good faith as to Pearson and that the trial court abused its
discretion by imposing sanctions against Pearson.  See Low, 221 S.W.3d at 614; Am.
Flood Research, Inc., 192 S.W.3d at 584B85; Glass
v. Glass, 826 S.W.2d 683, 687 (Tex. App.CTexarkana
1992, writs denied).

We
conclude and hold that the trial court abused its discretion by imposing
sanctions against Pearson.  We sustain
her second issue.

                                                     Conclusion








Having
overruled Pearson=s first issue, we affirm the
trial court=s
order denying her motion to modify, correct, or reform the agreed decree.  But having sustained her second issue, we
reverse the trial court=s March 19, 2009 order
imposing sanctions against Pearson and order that Stewart take nothing from
Pearson on his sanctions motion.[11]  

 

TERRIE LIVINGSTON

CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

 

DELIVERED:  May 6, 2010











[1]The rate of the first
biweekly payment is listed incorrectly in the original decree as $789.17, the
monthly payment; the trial court corrected this clerical error in a nunc pro
tunc decree.





[2]Although Pearson
complains that the trial court aborted the hearing after determining the motion
was prohibited by section 156.401, it is clear that the trial court treated the
attorneys= argument on the
motion, though unsworn, as evidentiary. 
Pearson did not object; thus, we overrule her contention that she was
denied a hearing on her motion.  See
In re M.N., 262 S.W.3d 799, 804 (Tex. 2008); Banda v. Garcia, 955
S.W.2d 270, 272 (Tex. 1997).





[3]At the January 30,
2009 hearing, Pearson testified that she agreed to the terms of divorce and
that an amount of child support had been calculated Ain conference with
the judge earlier today.@  When she expressed some confusion as to why
the child support amount was less than what she had been receiving pursuant to
the temporary orders, the trial judge explained that a health insurance credit
had been applied, which brought the amount down.  When the trial court asked if she understood,
Pearson answered, AI guess.@  However, when asked later whether the decree
was in her best interest and her daughters= best interests, she said, AYes.@





[4]Stewart=s counsel argued to
the trial court that this certification is misleading and false.





[5]The discovery
deadline was January 5, 2009.





[6]After counsel=s request for judicial
notice, there was a discussion between counsel and the trial court as to which
documents counsel was referring to, after which, the trial court answered, AOkay.@





[7]Pearson=s counsel later told
the trial court that the first subpoena was served between February and May
2008.





[8]The trial court had
previously found that Pearson=s counsel filed the
motion to extend erroneously, but not frivolously, before initially declining
to award sanctions.  But the trial judge
changed her mind after additional argument.





[9]Because the trial
court ordered Pearson rather than her attorney to pay the sanctions, we must
determine whether sanctions against only Pearson herself are just.  See Am. Flood Research, Inc., 192
S.W.3d at 583; TransAm., 811 S.W.2d at 917.





[10]In arguing the
propriety of sanctions, Stewart=s counsel even
asserted that the filing of the motion to extend showed a course of conduct by
Pearson=s counsel, relying on
a prior opinion in which a trial court had sanctioned him in a different
case.  See Elkins v. Stotts-Brown,
103 S.W.3d 664, 667 (Tex. App.CDallas 2003, no
pet.).





[11]Stewart did not file
his own notice of appeal.  Thus, even if
we were to determine that sanctions were otherwise proper, we could not modify
the sanctions order to order Pearson=s counsel to pay the award, nor remand for
the trial court to consider sanctioning Pearson=s counsel.  See Tex. R. App. P. 25.1(c); State
v. Brown, 262 S.W.3d 365, 370 (Tex. 2008); Sellers v. Foster, 199
S.W.3d 385, 402 n.13 (Tex. App.CFort Worth 2005, no
pet.).